1   GIBSON, DUNN & CRUTCHER LLP
    JOEL A. FEUER, SBN 100663
2   JFeuer@gibsondunn.com
    ANDREW J. DEMKO, SBN 247320
3   ADemko@gibsondunn.com
    2029 Century Park East, Suite 4000
4   Los Angeles, California 90067
    Telephone: (310) 552-8500
5   Facsimile: (310) 551-8741

6   GIBSON, DUNN & CRUTCHER LLP
    LINDSEY E. BLENKHORN, SBN 227484
7   lblenkhorn@gibsondunn.com
    555 Mission Street, Suite 3000
8   San Francisco, California 94105-2933
    Telephone: (415)393-8200
9   Facsimile: (415)393-8306

10  Attorneys for Defendants
    DAVID ZINBERG, LAWRENCE Y. KONG,
11  CLAUDIA Y. LIU, LEON KUPERMAN,
    PETER G. HANELT, GARY Y. ITKIN, AND
12  MAN JIT SINGH

13

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16

17  | In re BIDZ.COM, INC. DERIVATIVE | MASTER FILE NO. CV09-04984-PSG |
    | LITIGATION | |
18  | | **INDIVIDUAL DEFENDANTS'** |
    | | **NOTICE OF MOTION AND MOTION** |
19  | This Document Relates To: | **TO DISMISS PLAINTIFFS'** |
    | ALL ACTIONS | **CONSOLIDATED DERIVATIVE** |
20  | | **COMPLAINT UNDER FEDERAL** |
    | | **RULE OF CIVIL PROCEDURE** |
21  | | **12(b)(6); SUPPORTING** |
    | | **MEMORANDUM OF POINTS AND** |
22  | | **AUTHORITIES** |
23  | | [Request for Judicial Notice and |
    | | [Proposed] Order filed concurrently |
24  | | herewith] |
25  | | DATE :       April 26, 2010 |
    | | TIME:        1:30 p.m. |
26  | | JUDGE:       The Hon. Philip S. Gutierrez |
27  | | TRIAL DATE:       NONE SET |
28

Gibson, Dunn &
Crutcher LLP

---

**INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED DERIVATIVE COMPLAINT**

NOTICE IS HEREBY GIVEN that on April 26, 2010, at 1:30 p.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Philip S. Gutierrez of the above-entitled Court, Courtroom 790, 255 East Temple Street, Los Angeles, CA 90012, defendants David Zinberg, Lawrence Y. Kong, Claudia Y. Liu, Leon Kuperman, Peter G. Hanlet, Gary Y. Itkin, and Man Jit Singh (collectively, "Individual Defendants"), shall and hereby do move the Court for an order dismissing Plaintiffs' Consolidated Derivative Complaint without leave to amend.

Nominal Defendant Bidz.com, Inc. ("Bidz") has concurrently filed a Motion to Dismiss on the grounds that Plaintiffs have failed to make an adequate demand upon the Board of Directors and have not pled with particularity why demand should be excused, as required by Federal Rule of Civil Procedure 23.1 and governing Delaware law. If the Court grants that Motion and dismisses the Complaint, then the Court need not rule on this Motion, which will be moot. If the Court does not, for some reason, grant Bidz's Motion to Dismiss for failure to properly plead demand futility, then the Individual Defendants respectfully request that the Court consider this Motion.

This Motion is brought by the Individual Defendants, and is made under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs' Complaint fails to state a cause of action, even assuming all factual allegations are true, that any of the Individual Defendants breached their fiduciary duties to the corporation. Accordingly, Plaintiffs' Complaint should be dismissed with prejudice.

//
//
//
//
//
//
//
//

Gibson, Dunn &
Crutcher LLP

**INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED DERIVATIVE COMPLAINT**

1    This Motion is made following the conference of counsel pursuant to L.R. 7-3,

2    which took place on January 14, 2009.

3    Dated: January 22, 2010                  GIBSON, DUNN & CRUTCHER LLP

4                                                              /S/

5                                             _____
                                             By:          Joel A. Feuer
6
                                             Attorneys for Defendants
7                                            DAVID ZINBERG, LAWRENCE Y. KONG,
                                             CLAUDIA Y. LIU, LEON KUPERMAN,
8                                            PETER G. HANELT, GARY Y. ITKIN, AND
                                             MAN JIT SINGH

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

3

**INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED DERIVATIVE COMPLAINT**

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ......................................................................................... 1

II.  SUMMARY OF PLAINTIFFS' ALLEGATIONS............................................ 4

    A.   Plaintiffs' Allegations Regarding Bidz's Purported Business Practice Problems ....... 4

    B.   Plaintiffs' Allegations Regarding Specific Individual Defendants........................... 8

III. PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF ....................... 9

IV.  PLAINTIFFS HAVE FAILED TO ALLEGE A CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY................................................................. 10

    A.   Bidz's Certificate Of Incorporation Limits Director Liability.................................. 10

    B.   Plaintiffs Must Allege Bad Faith As To Each Challenged Director Because Plaintiffs Attempt to Allege Lack Of Oversight ........................ 11

    C.   Plaintiffs Have Failed To Adequately Allege Bad Faith By Any Director or Officer .......................................................... 12

        1.   Plaintiffs Fail to Allege Bad Faith by Any of Bidz's Outside Director Defendants .......................................................... 13

        2.   Plaintiffs Fail to Allege Bad Faith by Bidz's Inside Director Defendants..... 17

        3.   Plaintiffs Fail to Allege Either Bad Faith or Gross Negligence by Bidz's Officer Defendants................................... 19

V.   PLAINTIFFS HAVE FAILED TO ALLEGE A CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY FOR INSIDER SELLING AND MISAPPORPRIATION OF INFORMATION................................................ 20

    A.   Plaintiffs Do Not Establish Scienter With Respect to Liu or Zinberg ...................... 20

    B.   Plaintiffs Do Not Establish That Zinberg and Liu Possessed Adverse, Nonpublic Information.......................................... 22

VI.  PLAINTIFFS HAVE FAILED TO ALLEGE A VIABLE CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA CORPORATION CODE SECTION 25402 .................. 23

VII. PLAINTIFFS HAVE FAILED TO ALLEGE A VIABLE CAUSE OF ACTION FOR WASTE OF CORPORATE ASSETS................................................ 24

VIII. PLAINTIFFS HAVE FAILED TO ALLEGE A VIABLE CAUSE OF ACTION FOR UNJUST ENRICHMENT........................................... 25

IX.  CONCLUSION ....................................................................................... 25

INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED DERIVATIVE COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. Iqbal,*
__ U.S. __, 129 S.Ct. 1937 (2009) ...................................................................... 2, 9, 19

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................................... 2, 9

*Benihana of Tokyo, Inc. v. Benihana, Inc.,*
891 A.2d 150 (Del. Ch. 2005) .................................................................................. 12

*Brehm v. Eisner (In re Walt Disney Co. Derivative Litig.),*
906 A.2d 27 (Del. 2006) .............................................................................. 3, 11, 24

*City of Roseville Employees' Ret. Syst. v. Horizon Lines, Inc.,*
2009 U.S. Dist. LEXIS 106186 (D. Del. November 13, 2009) ....................... 22

*Desimone v. Barrows,*
924 A.2d 908 (Del. Ch. 2007) ......................................................................... 3, 9, 11

*Gomez v. Bidz.com, Inc.,*
Central District Case No. 09-03216 CBM-EX ............................................. 5, 16

*Grimes v. Donaldson,*
673 A.2d 1207 (Del. 1996) ........................................................................................ 24

*Guttman v. Huang,*
823 A.2d 492 (Del. Ch. 2003) ............................................................................ passim

*In re Caremark Int'l Derivative Litig.,*
698 A.2d 959 (Del. Ch. 1996) ............................................................................ passim

*In re Citigroup Inc. Shareholder Derivative Litig.,*
964 A.2d 106 (Del. Ch. 2009) ............................................................................ passim

*In re CNET Networks, Inc. Deriv. Litig.,*
483 F.Supp.2d 947 (N.D. Cal. 2007) ...................................................................... 13

*In re Countrywide Fin. Corp. Derivative Litig.,*
554 F. Supp. 2d 1044 (C.D. Cal. 2008) .................................................................. 23

*In re Emerging Comm., Inc. Shareholders Litig.,*
No. 16415, 2006 Del. Ch. LEXIS 25 (Del. Ch. May 3, 2004) ......................... 14

*In re Gilead Scis. Secs. Litig.,*
536 F.3d 1049 (9th Cir. 2008) ..................................................................................... 9

*In re IAC/InterActiveCorp Secs. Litig.,*
478 F. Supp. 2d 574 (S.D.N.Y. 2007) .................................................................... 22

*In re Oracle Corp. Derivative Litig.,*
867 A.2d 904 (Del. Ch. 2004) ........................................................................... 20, 22

*In re Silicon Graphics Sec. Litig.,*
183 F.3d 970 (9th Cir. 1999) ..................................................................... 13, 20, 21

*In re VeriSign, Inc., Derivative Litig.,*
531 F. Supp. 2d 1173 (N. D. Cal. 2007) ................................................................ 24

*In re Walt Disney Co. Derivative Litig.,*
907 A.2d 693 (Del. Ch. 2005) .................................................................................. 20

Gibson, Dunn &
Crutcher LLP

*Loveman v. Lauder*,
    484 F. Supp. 2d 259 (S.D.N.Y. 2007) ............................................................. 13

*Malone v. Brincat*,
    722 A.2d 5 (Del. 1998) ....................................................................................... 20

*McPadden v. Sidhu*,
    964 A.2d 1262 (Del Ch. 2008) ......................................................................... 25

*Metzler Invest. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1067 (9th Cir. 2008) ......................................................................... 22

*Midland Grange No. 27 Patrons of Husbandry v. Walls*,
    No. 2155-VCN, 2008 Del. Ch. LEXIS 28 ...................................................... 12

*Raconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ..................................................................... 21, 22

*Rattner v. Bidzos*,
    2003 Del. Ch. LEXIS 103 (Del. Ch. Sept. 30, 2003) ................................... 14

*Stiegele v. Bailey*,
    2007 U.S. Dist. LEXIS 86469 (D. Mass Aug. 23, 2007) ......................... 21, 23

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ........................................................................... 2, 11

*White v. Panic*,
    783 A.2d 543 (Del. 2001) ................................................................................. 24

*Wood v. Baum*,
    953 A.2d 136 (Del. 2008) .......................................................................... 15, 17

*Zucco Partners LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ........................................................................... 16

**Statutes**

Cal. Corp. Code § 2116 .............................................................................................. 10

Cal. Corp. Code § 25402 ............................................................................................ 23

Del. Code tit. 8 § 102(b)(7) ........................................................................................ 10

**Other Authorities**

Cal. Practice Guide:  *Corporations* § 6:368.2m (The Rutter Group 2009) ...................... 23

http://www.citronresearch.com/index.php/disclamer/ ............................................. 7

www.bidz.com ............................................................................................................... 4

www.ripoffreport.com .................................................................................................. 4

**INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED DERIVATIVE COMPLAINT**

Gibson, Dunn &
Crutcher LLP

## MEMORANDUM OF POINTS & AUTHORITIES

## I.    INTRODUCTION

Nominal Defendant Bidz.com, Inc. ("Bidz") has concurrently filed a Motion to Dismiss on the grounds that Plaintiffs have failed to make an adequate demand upon the Board of Directors and have not pled with particularity why a demand should be excused, as required by Federal Rule of Civil Procedure 23.1 and governing Delaware law.  If the Court grants that Motion and dismisses the Complaint, then this Motion will be moot and the Court need not rule on it.  If the Court nevertheless determines that a demand on the Board would have been futile, then the Individual Defendants respectfully request that the Court consider this Motion.

Plaintiffs Farris Hassan and David Hughes' ("Plaintiffs") Consolidated Complaint, in addition to failing to properly plead demand futility, is legally deficient for the additional, fatal reason that it does not allege specific, individualized facts that any of the Individual Defendants David Zinberg, Lawrence Y. Kong, Claudia Y. Liu, Leon Kuperman, Peter G. Hanlet, Gary Y. Itkin, and Man Jit Singh (collectively, "Individual Defendants") breached their fiduciary duties as directors or officers, engaged in insider selling or misappropriation of information in violation of California Corporation Code Section 25402, wasted corporate assets or were unjustly enriched.

Plaintiffs' allegations that the Individual Defendants breached their fiduciary duties are premised upon their alleged failure to properly oversee Bidz's business operations, thereby permitting Bidz to (1) disseminate false financial statements and other false public statements; and (2) commit wrongdoing in the operation of its on-line jewelry auction business.  Plaintiffs offer only conclusory, highly generalized allegations that the Individual Defendants knew of, participated in, or should have known of the alleged wrongdoing.  In sum, Plaintiffs allege wrongdoing by Bidz and that the Individual Defendants as directors must have known of and/or participated in the alleged wrongdoing, but Plaintiffs fail to support that assumed knowledge or

Gibson, Dunn & Crutcher LLP

1

participation with anything other than conclusory allegations.  Such a pleading unquestionably fails to meet the standard for breach of fiduciary duty imposed by the applicable Delaware law and the federal rules governing pleading as set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949–50 (2009).

Bidz is a Delaware corporation.  Compl., ¶ 18.  Its Certificate of Incorporation, consistent with Delaware law, exculpates its directors (Individual Defendants Singh, Hanelt, Itkin, Kong and Zinberg) for purported violations of their fiduciary duties with the exceptions of a violation of their duty of loyalty; for acts or omissions not performed in good faith or which involve intentional misconduct or a knowing violation of law; or for a transaction from which the director derived an improper personal benefit.  Thus, to the extent Plaintiffs seek to hold an Individual Director Defendant liable for money damages for breach of the individual director's duty of care (as opposed to his duty of loyalty), Plaintiffs' claim necessarily fails under the terms of the exculpatory language of the Company's Certificate in the absence of showing acts or omissions performed in bad faith.

Plaintiffs will no doubt argue that Count One asserts a claim for breach of the duty of loyalty based upon the Individual Defendants' alleged failures to oversee the corporation's business and operations under the *Caremark* decision.[1]  Under applicable Delaware law, a failure of oversight claim also requires the plaintiff to allege facts showing that the director acted in bad faith.  To meet this standard, a plaintiff must allege either (a) the directors utterly failed to implement any system of controls or oversight, or (b) having implemented a system of controls, the directors consciously failed to monitor or oversee its operation.  *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006).  A plaintiff must plead facts that show either the absence of controls or the

---

[1] *In re Caremark Int'l Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996)  (recognizing a claim for a director's failure to exercise oversight over the company).

**INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED DERIVATIVE COMPLAINT**

board's knowledge that the controls were inadequate but chose to do nothing about it. *Desimone v. Barrows*, 924 A.2d 908, 940 (Del. Ch. 2007).  Delaware courts characterize such a violation of the duty of loyalty as "**the most difficult theory in corporate law upon which a plaintiff might hope to win a judgment.**" *In re Caremark Int'l Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996) (emphasis added); *In re Citigroup Inc. Shareholder Derivative Litig.*, 964 A.2d 106, 125 (Del. Ch. 2009). Plaintiffs have failed to plead any specific facts demonstrating any of the Directors' bad faith with respect to oversight and a system of controls.  Likewise, Plaintiffs have also failed to plead facts showing that the Individual Officer Defendants – Chief Operating Officer Claudia Liu and Chief Technology Officer Leon Kuperman – acted in bad faith or with gross negligence.

Plaintiffs also allege that Individual Defendants David Zinberg, Bidz's CEO and founder, and Claudia Liu, Bidz's COO, breached their fiduciary duties and violated California Corporation Code Section 25402 by selling Bidz common stock while in possession of adverse, material non-public information – namely that the financial statements were false and that Bidz was engaging in operational wrongdoing.  Again, however, there are no facts tying the sales to Zinberg's or Liu's alleged knowledge of or participation in any wrongdoing.  The sale of stock by itself in not a wrongful act and contrary to the conclusory allegation in the Complaint (¶ 113), there was nothing suspicious about the sales.

Finally, Plaintiffs allege that the Individual Defendants wasted corporate assets – by paying bonuses to "certain of its executive officers" and by incurring legal fees to defend lawsuits – and as a result, were unjustly enriched.  Compl., ¶¶ 150-56.  Under Delaware law, waste is only found in the "rare unconscionable case where directors irrationally squander or give away corporate assets," which is a "high burden."  *Brehm v. Eisner (In re Walt Disney Co. Derivative Litig.),* 906 A.2d 27, 74-75 (Del. 2006). Payment of corporate bonuses and payment of defense costs do not, without much

Gibson, Dunn &
Crutcher LLP

3

more, constitute corporate waste.  Accordingly, the Individual Defendants request that the Court dismiss the Complaint.

## II.     SUMMARY OF PLAINTIFFS' ALLEGATIONS

### A.     Plaintiffs' Allegations Regarding Bidz's Purported Business Practice Problems

Bidz, an online jewelry retailer, conducts its business by holding on-line auctions of jewelry and other merchandise.  Compl., ¶ 37; *see generally* www.bidz.com.  Plaintiffs allege that the Individual Defendants breached their fiduciary duties to Bidz and its shareholders, committed corporate waste and were unjustly enriched as a result of a laundry list of alleged wrongdoing with respect to the operations of the company and alleged wrongdoing by the Board in **overseeing those operations**:

(1)     Plaintiffs contend that Bidz engaged in or permitted others to engage in shill bidding in connection with Bidz's on-line auctions for jewelry and other items.  Compl., ¶¶ 4, 37.  Shill bidding is defined as a bogus or fake bid by a bidder who does not want to purchase the item but hopes to drive up the item's selling price.  *Id*. ¶ 40.  Plaintiffs contend that Bidz itself engaged in shill bidding in order to drive up the price of jewelry sales and its own revenues.  *Id*. ¶ 42.  Plaintiffs rely upon three "sources" of information to support their allegations that shill bidding exists:

a.  Plaintiffs reference three anonymous complaints on the third party website "Ripoff Report," which allows anybody to post a grievance whether true or false, justified or imagined (Compl., ¶ 44)[2];

b.  Plaintiffs report that during one 2.5 hour period in a single day, they identified 100 bidders with "suspicious" account names (Compl., ¶ 47),

---

[2] *See* www.ripoffreport.com which advises that "Ripoff Report® is a worldwide consumer reporting Web site and publication, by consumers, for consumers, to file and document complaints about companies or individuals. While we encourage and even require authors to only file truthful reports, **Ripoff Report does not guarantee that all reports are authentic or accurate.**"(emphasis added)

**INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED DERIVATIVE COMPLAINT**

but do not and cannot allege that this sample is statistically significant and implicitly concede that they cannot confirm that these bidders with suspicious account names submitted a single false bid (*id.*¶ 48 ("**Assuming** that the [suspicious account names] are dummy accounts posting shill bids….))(emphasis added);

    c.   Plaintiffs reference a federal securities complaint against Bidz that, in turn, references shill bidding based upon an alleged Confidential Witness who "declined to discuss the particulars of his testimony with Plaintiffs" (Compl., ¶¶ 50-52).[3]

    (2)   Plaintiffs also complain that Bidz employed "Stonefield Johnson, Inc.," as its outside auditors, who according to Plaintiffs have been "harshly criticized" by the Public Company Accounting Oversight Board ("PCAOB").  Compl., ¶ 56.  Plaintiffs have, of course, named the wrong auditing firm.  Bidz's outside auditors are Stonefield Josephson, Inc.  Plaintiffs also fail to:

    a.   Allege that any criticisms by the PCAOB related to Stonefield Josephson's work for Bidz;

    b.   Mention that Stonefield Josephson reviewed the PCAOB's "criticisms" and certified that "nothing came to our attention that caused us to believe that our previously issued auditor's reports should not be relied on." (RJN, Exh. B, at 22); or

---

[3]  *Gomez v. Bidz.com, Inc.*, Central District Case No. 09-03216 CBM-EX. Defendants Bidz and Zinberg moved to dismiss that action on December 4, 2009, which is attached as Exhibit V to the Request for Judicial Notice ("RJN") filed concurrently herewith.  A hearing on the motion to dismiss is scheduled for March 22, 2010.

Gibson, Dunn & Crutcher LLP

     c.  Disclose that the PCAOB has made similar criticisms of *every* major auditing firm in the country during the same period. *See* http://www.pcaobus.org/Inspections/Public_Reports/index.aspx.[4]

(3)    Plaintiffs also complain that the Defendants allegedly failed to ensure that Bidz had an adequate system of internal operational controls. Compl., ¶ 61. In support of this allegation, Plaintiffs point to the following operational issues:

     a.  Bidz allegedly used a "suspect appraiser" to appraise jewelry sold on its site (Compl., ¶¶ 60, 62-66);

     b.  Defendants Zinberg and Itkin allegedly had "suspicious relationships" with known felons (Compl., ¶¶ 61, 77, 78-79);[5]

     c.  Bidz allegedly permitted the use of inaccurate descriptions and photographs of items sold to customers so that customers may have been misled about what they were purchasing (Compl., ¶¶ 67-71); and

     d.  Bidz allegedly took measures to stop auction sales if the winning bid was below a certain price, which Plaintiffs acknowledge "was designed solely to ensure that Bidz would not lose money on the items it sold." Compl., ¶ 73. Plaintiffs' alleged "source" for this allegation is a confidential witness about which there is no information concerning his or her position, dates of employment or basis for knowledge. *Id.* ¶¶ 73-75.

(4)    Bidz allegedly made false and misleading statements in its financial reporting in its press releases, investor conference calls and public filings with the SEC on August 13, 2007 and November 12, 2007. Compl., ¶¶ 83-88. Plaintiffs allege that

---

[4] *See* RJN, Exhs. E, F, G and H, attaching public PCAOB inspection reports (available on the PCAOB website) on the so-called "Big Four" accounting firms: PricewaterhouseCoopers, dated, 10/18/2007; KPMG, dated 7/26/2007; Ernst & Young, dated 5/2/2007; and Deloitte & Touche, dated 6/14/07.

[5] Defendant Itkin allegedly once owned an "illegal" strip club in 1999, more than six years before the company went public and before the Relevant Period. Compl., ¶ 78. Bidz became a public company in May 2007. RJN, Exh. I, at 233.

INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED DERIVATIVE COMPLAINT

Bidz's public statements were false and misleading because Bidz did not disclose to the public that its business operations were flawed in the manner described in points (1) through (3) above.

(5)    Plaintiffs also contend that Bidz failed to reveal that it had entered into a related party transaction with LA Jewelers "pursuant to which LA Jewelers guaranteed Bidz a 20% gross profit upon Bidz's sale of LA Jeweler's products." *Id.* ¶ 94. Contrary to Plaintiffs' allegations, Bidz repeatedly disclosed the related-party transaction with LA Jewelers. *See, e.g.,* RJN, Exhs. J, K, L, N.

As "support" for their allegations, Plaintiffs describe two November 2007 online articles published by Citron Research, a website, that claimed "rampant shill bidding . . . had taken place during [Bidz's] online auctions" and "disclosed" Bidz's "contacts with [a] convicted felon."  Compl., ¶¶ 9, 95-99.[6]  By its own admission, Citron takes short positions in the stocks of the companies that are the subject of its report, thereby "betting" that the stock price will fall.[7]  The articles question certain aspects of Bidz's business model and express Citron Research's opinion as to whether Bidz can sustain itself into the future.  Plaintiffs do not explain how Bidz's public statements and disclosures–when viewed against Citron Research's opinion–create a basis for liability for any Individual Defendant.

Plaintiffs also reference the fact that the SEC is investigating Bidz's inventory accounting practices and the FTC is investigating Bidz's email marketing practices. Compl., ¶¶ 101-03.  Plaintiffs do not and cannot make any allegations regarding the

---

[6]  Citron admits: "**Citron Research makes no representations, and specifically disclaims all warranties, express, implied, or statutory regarding the accuracy, timeliness, or completeness of any material contained in this site.**  You should seek the advice of a security professional regarding your stock transactions." http://www.citronresearch.com/index.php/disclamer/.  (emphasis added).

[7]  Citron discloses on its site: "The principals of Citron Research most always hold a position in any of the securities profiled on the site.  Citron Research will not report when a position is initiated or covered.  Each investor must make that decision based on his/her judgment of the market." http://www.citronresearch.com/index.php/disclamer/

INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED DERIVATIVE COMPLAINT

outcome of the investigations or their relevance to this Action.  *Id.*  Beyond the fact that government agencies are conducting investigations, the Complaint does not allege that Bidz, in fact, engaged in wrongful conduct relating to inventory accounting or email marketing practices exposing it to regulatory liability or that the Individual Defendants, acting in bad faith, knew of the purported wrongful conduct and could have stopped it.

Finally, Plaintiffs allege that Defendants Zinberg and Liu engaged in insider trading and violated California securities laws by selling Bidz stock while in possession of non-public information regarding the company's improper business practices.  Compl., ¶¶ 112-14.

**B.    Plaintiffs' Allegations Regarding Specific Individual Defendants**

Plaintiffs make few specific allegations as to outside director Defendants Hanelt, Singh and Itkin aside from their names, board positions, and years of service.  Compl., ¶¶ 23-25.  Plaintiffs make conclusory allegations, with no factual support of any kind, that that the Outside Director Defendants breached their fiduciary duties first, as members of the Audit Committee, and second, by allegedly failing to properly oversee Bidz's business operations, which led to the operational problems outlined above.

Similarly, other than stating that Defendant Kong is married to Defendant Liu, (Compl., ¶ 129), Plaintiffs do not make any specific allegations about Kong, preferring instead to make all of the same generalized, conclusory group allegations that Plaintiffs make about the Outside Directors.  Plaintiffs also assume that Kong had access to information and must have approved or ratified the purported false and misleading statements, particularly in Bidz's financials.  Compl., ¶ 18.  Plaintiffs have made no specific allegations that Defendant Kong knew of any of the wrongdoing.  *Id.*

Plaintiffs claim that Defendants Liu and Zinberg breached their fiduciary duties by engaging in insider selling.  Compl., ¶ 11.  In support of these allegations, Plaintiffs assume that Zinberg and Liu had access to or received unspecified "material non-public information" (*Id.* ¶ 114) about Bidz, and based on this sole unsupported

1    assumption that they "sold Bidz common stock on the basis of and because of their

2    knowledge of this material non-public information." *Id.* ¶ 141.  There are no

3    supporting factual allegations showing what Zinberg and Liu each knew with regard to

4    the relevant operations and conduct of the Company's business.

5        Plaintiffs also claim that Zinberg has "extensive contacts with convicted felons

6    and other untrustworthy individuals" and was responsible for making or causing to

7    make various false and misleading statements regarding Bidz and its business model.

8    Compl., ¶¶ 32; 45; 79-80; 84-88.

9    ### III.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF

10       A motion to dismiss must be granted if the plaintiff fails to plead facts sufficient

11   to "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v.*

12   *Twombly*, *supra*, 550 U.S. at 570 (2007).  A claim lacks facial plausibility unless it

13   pleads factual content that "allows the court to draw the reasonable inference that the

14   defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, *supra*, 129 S.Ct.

15   1937, 1949–50 (2009).  The Court "'need not . . . accept as true allegations that are

16   merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *In*

17   *re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotations

18   ommitted); *see also Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a

19   cause of action, supported by mere conclusory statements, do not suffice.").

20   Therefore, the burden required to allege a claim for relief after *Twombly* and *Iqbal*,

21   plus the difficulty of alleging a breach of fiduciary duty based on a failure to oversee

22   the company's actions under Delware law ("the most difficult theory [of liability] in

23   corporation law"), "together function to place an *extremely high burden* on a plaintiff

24   to state a claim for personal director liability for failure to see the extent of a

25   company's business risk." *In re Citigroup Shareholder Derivative Litig.*, 964 A.2d

26   106, 123-125 (Del. Ch. 2009) (emphasis added).  As the Court explained in *Desimone*

27   *v. Barrows*, 924 A.2d 908, 928 (Del. Ch. 2007):

28

Gibson, Dunn &
Crutcher LLP

to survive a Rule 12(b)(6) motion, a complaint alleging breach of fiduciary duty must plead facts supporting an inference of breach, not simply a conclusion to that effect.  As the United States Supreme Court recently explained in *Bell Atlantic Corp. v. Twombly* . . . our nation's high court has now embraced the pleading principle that Delaware courts have long applied, which is that a complaint must plead enough facts to plausibly suggest that the plaintiff will ultimately be entitled to the relief she seeks.  If a complaint fails to do that and instead asserts mere conclusions, a Rule 12(b)(6) motion to dismiss must be granted.

By these standards, Plaintiffs' claims are incurably defective and merit dismissal.

## IV.
## PLAINTIFFS HAVE FAILED TO ALLEGE A CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

### A.    Bidz's Certificate Of Incorporation Limits Director Liability

Under Delaware law,[8] corporations can eliminate liability for a director's breaches of fiduciary duty except in limited circumstances such as those involving breaches of the duty of loyalty; acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; or for a transaction from which the director derived an improper personal benefit.  Del. Code tit. 8 § 102(b)(7).  Bidz's Certificate of Incorporation limits the personal liability of the Bidz directors to the fullest extent permitted by Delaware and California law:

> *Liability.*    A director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that this Section 6 shall not eliminate or limit the liability of a director to the extent provided by applicable law (a) for any breach of the duty of loyalty of the director, (b) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (c) for any unlawful action under Section 174 of the General Corporation Law of the State of Delaware or (d) for any transaction from which the director derived an improper personal benefit. . . .

RJN, Exh. A, at Article 5 § 6.

---

[8] Bidz is a Delaware corporation, and thus Delaware law governs the standards of director liability applied in this case because the law of a company's state of incorporation governs the standards for corporate fiduciary liability.  *See* Cal. Corp. Code § 2116 (codification of California's internal affairs doctrine, which provides that California courts will apply the law of the state of incorporation when determining the liability of a director of a foreign corporation).

Gibson, Dunn & Crutcher LLP

10

Because of this exculpatory clause, Plaintiffs must plead specific facts showing a director's bad faith in order for liability to attach for a breach of the duty of care. They have not done so.  As the Delaware Court of Chancery recently explained, the concept of bad faith in this context requires factual allegations "that a director knowingly violated a fiduciary duty or failed to act in violation of a known duty to act, demonstrating a *conscious* disregard for her duties."  *Citigroup*, 964 A.2d at 125 (original emphasis); *see also In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006).  Plaintiffs' allegations do not satisfy the standard of bad faith under Delaware law.

**B.    Plaintiffs Must Allege Bad Faith As To Each Challenged Director Because Plaintiffs Attempt to Allege Lack Of Oversight**

In cases such as this one that involve the alleged failure of a board of directors to oversee the company, a plaintiff must allege either (a) that the directors utterly failed to implement any system of controls or oversight, or (b) having implemented a system of controls, the directors consciously failed to monitor or oversee its operation.  *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (dismissing derivative complaint for failing to meet the *Caremark* standard).  A plaintiff must plead facts that show either the absence of controls or the board's knowledge that the controls were inadequate but chose to do nothing about it.  *Desimone v. Barrows*, 924 A.2d 908, 940 (Del. Ch. 2007).  This is an extraordinarily high burden for a plaintiff to meet as explained by the Court in *Caremark*:

> Generally where a claim of directorial liability for corporate loss is predicated upon ignorance of liability creating activities within the corporation. . . .in my opinion only a sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system exits—will establish the lack of good faith that is a necessary condition to liability.

698 A.2d at 971.

The same standard applies to Plaintiffs' allegations that the Company's public disclosures were false and misleading.  Plaintiffs' disclosure allegations should be analyzed under the oversight liability standard because first, Plaintiffs repeatedly aver

Gibson, Dunn & Crutcher LLP

11

that the Individual Defendants "failed to maintain proper oversight" over the Company (Compl., ¶ 3), and second, Plaintiffs have not alleged any board action taken in connection with the disclosures at issue, and simply allege various disclosures made by the Company that the Individual Defendants "caused Bidz to make." *See id.* ¶ 8. *See Citigroup*, 964 A.2d at 133 n.88 (allegations that the director defendants "caused or allowed" certain statements do not make clear "how the board was actually involved in creating or approving the statements"). As discussed above, when there is no corresponding board action and liability is premised on inaction, Plaintiffs must plead allegations that amount to bad faith.[9]

## C.    Plaintiffs Have Failed To Adequately Allege Bad Faith By Any Director or Officer

Plaintiffs have failed to adequately allege that the Individual Defendants acted in bad faith. Instead, Plaintiffs rely on sweeping, unsupported conclusions of liability. *See, e.g.*, Compl., ¶¶ 1-12 (alleging, without any factual support, that the Individual Defendants engaged in and failed to disclose accounting irregularities, deceptive sales practices, improper relationships with suppliers, fraudulent bidding schemes and caused or allowed the Company to violate the law). Plaintiffs make no factual allegations regarding the information the Individual Defendants purportedly had that would have alerted them to the alleged problems at the Company, or any other reason that the Individual Defendants would have perceived any problems. *Guttman v. Huang*, 823 A.2d 492, 507 (Del. Ch. 2003) (no liability where a "complaint does not plead a single fact suggesting specific red—or even yellow—flags were waved").

---

[9] The same standard of "bad faith" applies to any claims against the Individual Defendants in their capacities as corporate officers for breach of the duty of loyalty. *See Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 191 (Del. Ch. 2005) (noting that the same duty of loyalty applies to all corporate fiduciaries, including both officers and directors); *see also Midland Grange No. 27 Patrons of Husbandry v. Walls*, No. 2155-VCN, 2008 Del. Ch. LEXIS 28 at 43-44 (applying the duty of loyalty's bad faith standard to corporate officers).

Gibson, Dunn & Crutcher LLP

INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED DERIVATIVE COMPLAINT

1   Plaintiffs have not connected the Individual Defendants to the alleged
2   wrongdoing through factual allegations; instead, they simply put forth conclusory
3   assumptions about an alleged conspiracy and argue that the Individual Defendants
4   must have known and/or participated in the wrongdoing "because of their positions of
5   control and authority."[10]  Compl., ¶ 28.  Such allegations are legally inadequate.
6   *Loveman v. Lauder*, 484 F. Supp. 2d 259, 264 n.24 (S.D.N.Y. 2007); *In re Silicon*
7   *Graphics Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999) ("[Plaintiff's] claim rests on a
8   general allegation that the Board participated in the fraudulent scheme.  Such general
9   allegations are insufficient to demonstrate that the Board engaged in [that] conduct.").

### 1.    Plaintiffs Fail to Allege Bad Faith by Any of Bidz's Outside Director Defendants

Plaintiffs make conclusory allegations that that the Outside Director Defendants
breached their fiduciary duties (1) by virtue of their membership on the Audit
Committee, and (2) by allegedly failing to properly oversee Bidz's business practices,
which led to various operational problems.  Such general allegations do not satisfy
Plaintiffs' burden to show that the Outside Director Defendants individually and
consciously acted in bad faith.

### a.    Plaintiffs' Audit Committee Allegations Do Not Show Bad Faith

Plaintiffs allege that the Outside Director Defendants served on the Audit
Committee, which they claim, failed to replace Bidz's independent auditor, despite a
negative report about the auditor from the PCAOB.  Compl., ¶ 57.  First, the mere fact
that directors were members on a particular committee, without "specific allegations as
to the defendants' roles and conduct" on that committee, is insufficient.  *In re CNET*
*Networks, Inc. Deriv. Litig.*, 483 F.Supp.2d 947, 963 (N.D. Cal. 2007); *see also In re*

---

[10]  Plaintiffs' conclusory statements about an alleged conspiracy should be disregarded entirely.  *See Loveman*, 484 F. Supp. 2d at 264 & n.24 ("putting to one side the entirely conclusory allegation of conspiracy" for failing to plead it with particularity in support of plaintiffs' *Caremark* claim).

Gibson, Dunn & Crutcher LLP

13

*Emerging Comm., Inc. Shareholders Litig*, No. 16415, 2006 Del. Ch. LEXIS 25, at *152-53 (Del. Ch. May 3, 2004) (noting that membership on a committee does not change the standard of director liability under *Caremark*, which requires a showing of bad faith). Plaintiffs instead must show a "sustained or systematic failure of the board to exercise oversight," a standard that is a "quite high." *Guttman v. Huang*, 823 A.2d 492, 506 (Del. Ch. 2003). Plaintiffs do not allege "that the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation." *Id.* at 507.

Not only do Plaintiffs fail to allege that the Outside Director Defendants were on notice of any irregularities and ignored them, Plaintiffs fail to provide any information on "what role, if any, the Board or its members played in the internal processes of collecting and disseminating financial information." *Rattner v. Bidzos,* 2003 Del. Ch. LEXIS 103, at *47-48 (Del. Ch. Sept. 30, 2003). All that can be determined from the face of the Complaint is that the Outside Director Defendants "were members of the Audit Committee during the Relevant Period and, thus, that the Company had an Audit Committee." *Id.*

Plaintiffs aver only that the Outside Director Defendants "idly stood by" while Stonefield served as Bidz's auditor. Compl., ¶ 57. Plaintiffs argue that Stonefield was "harshly criticized" by the PCAOB (*see id.*), but the "criticism" to which Plaintiffs refer does not criticize Stonefield's work for Bidz. This "criticism" is nothing more than a routine inspection by the PCAOB. RJN, Exh. B. In fact, the PCAOB has issued inspection reports for the "Big Four" accounting firms that are nearly identical to the inspection report that it issued for Stonefield. RJN, Exhs. E, F, G and H. If a director's bad faith was measured by whether an accounting firm has been investigated by the PCAOB, there would be next to no accounting firms that companies could employ, and the vast majority of directors and audit committees would be found to act

14

1  in bad faith as a matter of course.  Such a result defies both the law and common sense.

2  Employing an auditor that was the subject of a PCAOB investigation is hardly the

3  "sustained or systematic failure . . . to exercise reasonable oversight" that is necessary

4  to establish bad faith.  *Guttman v. Huang*, 823 A.2d 492, 506 (Del. Ch. 2003).  Further,

5  Plaintiffs conveniently omit the portion of the PCAOB's report in which Stonefield

6  certified that it investigated the PCAOB's comments and found that "nothing came to

7  our attention that caused us to believe that our previously issued auditor's reports

8  should not be relied on."  RJN, Exh. B, at 22.  Thus, the PCAOB's investigation is not

9  the "red – or even yellow – flags" that are required, at a minimum, to establish bad

10  faith.  *Guttman*, 823 A.2d at 507.

11  Nor are Plaintiffs' conclusory allegations that Hanelt and Singh "oversaw and

12  directly participated in the dissemination of Bidz's improper press releases" and

13  "participated in the preparation of improper financial statements" sufficient to establish

14  bad faith.  Compl., ¶ 124.  These allegations are unsupported by any facts; Plaintiffs

15  simply assume that Hanelt and Singh had access to information regarding the alleged

16  impropriety of Bidz's financials and somehow approved or ratified the purported false

17  and misleading statements.  Again, without pleading the kind of information that

18  Hanelt and Singh supposedly had access to, how they purportedly got the information,

19  what the information was, and what their role was in approving or ratifying the press

20  releases and financials, Plaintiffs have failed to adequately plead that Hanelt and Singh

21  acted in bad faith.  *See Guttman*, 823 A.2d at 503; *Wood v. Baum*, 953 A.2d 136, 142

22  (Del. 2008) ("The board's execution of financial reports, without more, is insufficient

23  to create an inference that the directors had actual or constructive notice of impropriety

24  or illegality.").

25  **b.    Plaintiffs' Remaining Allegations About Bidz's Business Model Are Also Insufficient to Show Bad Faith**

26  Plaintiffs also aver that Hanelt, Itkin and Singh breached their fiduciary duties

27  by "causing or permitting" Bidz to (1) engage in shill bidding; (2) use an appraisal firm

28

that Plaintiffs believe is inadequate; (3) provide customers with inaccurate descriptions and photos of items; and (4) refuse to honor winning bids if they were less than the cost that Bidz paid for the item.  Compl., ¶ 136.  Plaintiffs also take issue with Itkin's "extensive contacts with criminals."  Compl., ¶ 105.

First, with respect to shill bidding, Plaintiffs fail to show that the Outside Directors were aware of and ratified shill bidding.  In fact, Bidz's published policy is that shill bidding is "strictly prohibited."  Compl., ¶ 41.  Although Plaintiffs repeatedly claim that Bidz has "with knowledge and approval of the Individual Defendants, actively engaged in shill bidding," (Compl., ¶ 42), Plaintiffs fail to ground such "knowledge and approval" in any facts, let alone tie that "knowledge and approval" to the Outside Directors, simply concluding that because they were directors, they knew about shill bidding.  Compl., ¶ 124 ("For the reasons discussed above, Hanelt and Singh knew that the Company's business model was based on shill bidding.").  The hearsay of anonymous posters on a third party website and confidential witnesses from other actions[11] are not sufficient to establish bad faith (and in any event, neither the anonymous posters nor the confidential sources tie knowledge and approval of shill bidding to the Outside Directors).  Compl., ¶¶ 44-52.

Second, Plaintiffs also claim that Bidz used an "appraisal mill," AIG, to appraise its jewelry.  Plaintiffs cite a *Los Angeles Times* article where AIG admitted that it does not physically inspect every item it appraises.  Compl., ¶¶ 62-66.  Again, Plaintiffs

---

[11] Plaintiffs concede that CW1 "declined to discuss" his/her employment at Bidz with Plaintiffs' counsel and that Plaintiffs were unable to confirm CW1's statement in connection with the *Gomez v. Bidz.com* action.  As such, CW1's testimony should be disregarded entirely, even though it fails to establish knowledge of shill bidding by the directors in any event.  Compl., ¶ 51, n.4.  Statements of confidential witnesses without any indicia of reliability should be excluded.  *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).

CW2, for his/her part, does not claim either that shill bidding was actually taking place  or that the Outside Directors, Inside Directors, or Officers were aware of or in any way condoned shill bidding.  He/she said merely that some accounts had high balances. Compl., ¶ 52.

Gibson, Dunn & Crutcher LLP

make no effort to tie the use of AIG by Bidz to any of the Outside Directors, or attempt to attribute knowledge of AIG's alleged practices to any of the Directors. Even if any of the Outside Directors were aware of the use of AIG, allowing Bidz to continue its relationship with AIG does not rise to the level of bad faith in any event.

Third, Plaintiffs fail to allege that the Outside Directors had any knowledge of, participated in, or otherwise ratified the alleged refusal by Bidz to either provide customers with inaccurate descriptions and photos of items or refusal to honor winning bids if they were less than the cost that Bidz paid for the item. Compl., ¶ 136.

Finally, Plaintiffs also take issue with Itkin's "extensive contacts with criminals" Compl., ¶ 105. It goes without saying that a director's relationships with individuals outside of the company and beyond of the scope of his directorial duties are both irrelevant and insufficient to prove a director's bad faith.

In sum, Plaintiffs have not pled any instances in which specific information of shill bidding, appraisal mills or anything of the like was ever conveyed to the Outside Directors, and as a result, Plaintiffs have failed to carry their burden of establishing bad faith with respect to those Outside Directors.

## 2. Plaintiffs Fail to Allege Bad Faith by Bidz's Inside Director Defendants

### a. Kong

Other than stating that Defendant Kong is married to Defendant Liu, (Compl., ¶ 129), Plaintiffs do not make any specific allegations about Kong, preferring instead to make all of the same generalized, conclusory group allegations that Plaintiffs made about the Outside Directors. Plaintiffs also assume that Kong had access to information and must have approved or ratified the purported false and misleading statements, particularly in Bidz's financials. But execution of financial reports, without more, is insufficient to create an inference that a director had actual or constructive notice of impropriety or illegality. *Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008). Plaintiffs also fail to accompany their conclusory allegations with facts

Gibson, Dunn &
Crutcher LLP

1  regarding the kind of information Kong was supposedly privy to, how he purportedly

2  got the information, or his role in approving or ratifying the purportedly false and

3  misleading statements.  *See Citigroup*, 964 A.2d at 133 n.88 (allegations that the

4  director defendants "caused or allowed" certain statements do not make clear "how the

5  board was actually involved in creating or approving the statements").  That Kong was

6  a Bidz officer is not enough to establish bad faith or the kind of "sustained or

7  systematic failure . . . to exercise oversight" necessary to survive dismissal.  *Caremark*,

8  698 A.2d at 971.

9          **b.    Zinberg**

10          Like Defendant Kong, Plaintiffs allege that Zinberg and his sister are both

11  officers of Bidz, and that Zinberg therefore had access to information and approved or

12  ratified false and misleading statements.  Compl., ¶¶ 19; 83-94.  But, as with Kong,

13  these allegations are not supported by factual allegations.  Plaintiffs also conclude

14  specifically as to Zinberg that he engaged in activities that created a substantial

15  likelihood of liability for securities and consumer fraud, and that he failed to disclose

16  improper relationships, deceit and defrauding of customers and fraudulent bidding

17  schemes.  *Id.* ¶¶ 77, 101-110.  But simply realleging the same conclusory allegations

18  made about all the Individual Defendants specifically as to Zinberg does not change

19  the fact that the allegations lack the requisite factual support.  Plaintiffs also allege that

20  Zinberg personally made certain false and misleading statements.  *See e.g.*, *id.* ¶¶ 84-

21  97.  But here again, Plaintiffs have failed to allege any particular facts indicating that

22  Zinberg had specific information and therefore acted in bad faith when he made the

23  allegedly false statements.  *See Guttman*, 823 A.2d at 503.

24          Plaintiffs also argue that Zinberg was aware of and tolerated shill bidding, and

25  made false and misleading statements about the fact that 20% of the winning bids in

26  Bidz's auctions do not result in transactions, which Plaintiffs claim was contradicted

27  by a declaration from Defendant Liu.  Defendant Liu's Declaration explains that from

28  2004 through 2008, Bidz conducted 25,730,845 online auctions, which resulted in the

sale of 14,402,007 items.  RJN, Exh. M, at 402.  Defendant Liu explained, however, that the difference between these two figures represents the number of winning bidders who did not pay for the items they won.  *Id.*  Plaintiffs claim that this discrepancy indicates not only that Zinberg made a false and misleading statement, but also that "shill bidding is rampant at Bidz" and that the Individual Defendants are "unwilling" to pursue fraud.  Compl., ¶ 45.

Even if it is true, as Plaintiffs allege, that 44% of Bidz's auctions do not end in a sale, that fact alone does not establish that Bidz's business model is based on shill bidding or that the Individual Defendants were aware of, and encouraged, shill bidding.  Bidz's business model, as stated, is designed to generate high traffic, some of which does not result in completed transactions.  The desire by Bidz to generate high traffic, even at the expense in some cases of completing transactions, does not in any way demonstrate bad faith by Zinberg or any of the other Individual Defendants. There are a multitude of obvious reasons why a customer may not pay for an auction they won: inadequate funds, buyer's remorse, intervention by a parent or spouse to name a few.  Yet Plaintiffs ask the Court to infer from Liu's statement that the Individual Directors not only were aware of shill bidding, but that their very business plan was based on it.  Such an inferential leap is unwarranted, especially where the pleading standard for bad faith is so stringent.  *Caremark,* 698 A.2d at 967; *Iqbal*, 129 S.Ct. at 1949.  That Plaintiffs disagree with Bidz's business model in no way rises to a breach of the fiduciary duty of loyalty or suggests that Zinberg or the other Individual Defendants engaged in bad faith.

### 3.    Plaintiffs Fail to Allege Either Bad Faith or Gross Negligence by Bidz's Officer Defendants

Plaintiffs also fail to properly allege breach of the duty of care or breach of the duty of disclosure with respect to Bidz's Officer Defendants, Kuperman and Liu. Plaintiffs allege only that Kuperman serves as Bidz's CTO and President and that Liu is the COO and is married to Kong.  Comp., ¶¶ 20; 22.  The only other general

Gibson, Dunn &
Crutcher LLP

allegations about Kuperman or Liu is that they, along with the other Individual Defendants, breached their fiduciary duties by allowing shill bidding, using an unqualified auditor, using a dubious appraisal provider, providing customers with inaccurate descriptions and photos, and refusing to honor winning bids.  Compl., ¶ 135.  Like the other generalized allegations in the Complaint, Plaintiffs make no effort to tie Liu or Kuperman to any of these alleged breaches of fiduciary duty and fail to show that they, separately and individually, acted with "reckless indifference to or a deliberate disregard" of the Company and the shareholders, *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 750 (Del. Ch. 2005), or in any way "deliberately misinform[ed] shareholders about the business of the corporation."  *Malone v. Brincat*, 722 A.2d 5, 14 (Del. 1998).

## V.    PLAINTIFFS HAVE FAILED TO ALLEGE A CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY FOR INSIDER SELLING AND MISAPPORPRIATION OF INFORMATION

In order to state a claim for breach of fiduciary duty based on insider selling and misappropriation of information, Plaintiffs must allege that Zinberg and Liu acted with scienter, by trading, in whole or in part, because they possessed material, adverse, nonpublic information.  *In re Oracle Corp. Derivative Litig.*, 867 A.2d 904, 906, 934 (Del. Ch. 2004).  In this case, Plaintiffs allege that Zinberg and Liu had nonpublic information in the form of Bidz's alleged "illicit and deceptive business practices" and "improper conduct."  Compl., ¶ 140.  Of course, as explained in this Motion, there are no actual facts alleged to support the allegation that Zinberg or Liu had any knowledge of or participation in the alleged wrongdoing or that any wrongdoing occurred.

## A.    Plaintiffs Do Not Establish Scienter With Respect to Liu or Zinberg

In order to constitute circumstantial evidence of scienter, allegations of insider trading must amount to "suspicious stock sales by corporate insiders . . . [that] are dramatically out of line with prior trading practices at times calculated to maximize personal benefit from the undisclosed inside information."  *Silicon Graphics*, 183 F.3d at 986.  Instead of making such a showing, Plaintiffs simply list Zinberg and Liu's

stock sales and note that the sales were "rather suspicious" because Liu had sold no shares before November 16, 2007 and Zinberg had sold no shares prior to August 15, 2007. Compl., ¶ 113. Plaintiffs neglect to mention the following: Bidz's stock only began trading on the NASDAQ on June 6, 2007; before then, there was not an established market in which to sell Bidz's securities. RJN, Exh. I, at 233. Absent an active market in which to sell Bidz's securities, it is impossible to find Zinberg and Liu's sales "suspicious" simply because they follow a period of time in which the parties could not readily sell their stock. *See Raconi v. Larkin*, 253 F.3d 423, 436 (9th Cir. 2001) (noting that the "seven month trading period prior to the class period offered by plaintiffs to prove the defendants' pattern of trading does not prove much about their trading habits, since they were not able to trade during some or much of that time"); *see also Silicon Graphics*, 183 F.3d at 987-88 (same).

Nor does the timing of both Zinberg's and Liu's sales raise suspicion. Individual Defendant Zinberg's alleged "suspicious" stock sales took place between August 15, 2007 and November 19, 2007. Compl., ¶ 112. During that period, as Plaintiffs note, Zinberg took no salary from Bidz, and Zinberg continued to sell stock at relatively the same pace following the alleged disclosure of fraud. Compl., ¶ 115; RJN, Exh. T, at 492; Exh. U, at 495. Moreover, the bulk of Zinberg's sales were made pursuant to Bidz's 10b5-1 plan. RJN, Exh. P, at 480; Exh. Q, at 483. Although Plaintiffs aver that the 10b5-1 stock plan was "never valid" – presumably to defeat the presumption that stock sales made pursuant to a 10b5-1 plan are prescheduled and not suspicious – Plaintiffs provide no reasoning or support as to why the plan was "invalid." Compl., ¶ 114. As a result, all of Zinberg's stock sales that were made during the Relevant Period that were made pursuant to the 10b5-1 plan cannot support a claim of scienter because "the presence of a trading plan rebuts an inference of scienter and supports the reasonable inference that stock sales were pre-scheduled and not suspicious." *Stiegele v. Bailey,* 2007 U.S. Dist. LEXIS 86469, at *34-35 (D. Mass Aug. 23, 2007); *In re IAC/InterActiveCorp Secs. Litig.*, 478 F. Supp. 2d 574, 604

Gibson, Dunn &
Crutcher LLP

(S.D.N.Y. 2007) ("A valid 10b5-1 plan serves as an affirmative defense to allegations of insider trading.").

As for Defendant Liu, she had options that she had to exercise before December 15, 2007, which must vest by a certain date or they may expire. *See e.g.*, *Metzler Invest. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1067 (9th Cir. 2008); RJN, Exh. R, at 486; Exh. S, at 489. And neither Zinberg nor Liu sold stock at the high price of approximately $20 per share in the Relevant Period. In fact, Zinberg never sold stock above $13.07 a share, and Liu sold her shares at $16.79 and $17.82 per share in an effort to exercise her options before they expired on December 15, 2007. Compl., ¶ 112. *See Larkin*, 253 F.3d at 435 ("When insiders miss the boat . . . their sales do not support an inference" of scienter). "Absent evidence of unusual … scope or timing, we will not infer fraudulent intent from the mere fact that some officers sold stock." *City of Roseville Employees' Ret. Syst. v. Horizon Lines, Inc.*, 2009 U.S. Dist. LEXIS 106186, at *57 (D. Del. November 13, 2009) (internal quotations omitted). Plaintiffs have failed to show that the stock sales by either Liu or Zinberg were unusual in scope or timing. Because these stock sales are just as likely (if not more likely) to be innocent sales, they do not give rise to an inference of scienter. As such, Plaintiffs have failed to state a claim for breach of fiduciary duty as a result of insider trading.

**B.    Plaintiffs Do Not Establish That Zinberg and Liu Possessed Adverse, Nonpublic Information**

In addition to scienter, Plaintiffs must also allege that Zinberg and Liu possessed adverse, nonpublic, material information. *In re Oracle Corp. Derivative Litig.*, 867 A.2d 904, 906, 934 (Del. Ch. 2004). For information to be material, the nonpublic information must be so important that upon disclosure, it would have "significantly altered the total mix of information in the marketplace." *Id.* In this case, Plaintiffs allege that Zinberg and Liu had nonpublic information in the form of Bidz's alleged "illicit and deceptive business practices" and "improper conduct" (Compl., ¶ 140) but as explained in Section II, *supra*, there are no actual facts alleged that support the

allegation that Zinberg or Liu had any knowledge of or participated in the alleged wrongdoing or that any wrongdoing occurred, and thus, this claim fails for the reasons that the breach of fiduciary duty claim does.  Plaintiffs make no attempt to explain exactly what information should have been disclosed, what knowledge Liu and Zinberg allegedly possessed, how they came into possession of that information and how that information was material.  *See Stiegele v. Bailey*, 2007 U.S. Dist. LEXIS 86469, at *32 (D. Mass August 23, 2007) ("the amended complaint fails to allege with particularity what insider knowledge the defendant directors possessed . . . at the time of the sales or how he may have learned such information.").  As such, Plaintiffs have failed to allege that Liu and Zinberg possessed adverse, nonpublic information, and this cause of action fails.

## VI.    PLAINTIFFS HAVE FAILED TO ALLEGE A VIABLE CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA CORPORATION CODE SECTION 25402

Plaintiffs also fail to state a cause of action for violation of California Corporation Code Section 25402, which creates a cause of action against officers and directors who "purchase or sell any security" when "he knows material information . . . which would significantly affect the market price of that security and which is not generally available to the public . . . ."  Cal. Corp. Code § 25402.  Like their breach of fiduciary duty claim for insider trading, Plaintiffs must allege that Zinberg and Liu traded in Bidz stock with actual knowledge of material, nonpublic information.[12]  *See In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1079 (C.D. Cal. 2008).  Plaintiffs have again failed to explain "which 'true adverse facts' each of the selling defendants knew, when each knew those facts, how they acquired the

---

[12] For the purposes of Section 25402, an insider is deemed not to have traded with knowledge of material inside information if the trade complied with a Rule 10b5-1 plan.  Cal. Practice Guide:  *Corporations* § 6:368.2m (The Rutter Group 2009).  As discussed above, Zinberg's trades were made pursuant to a 10b5-1 plan, and as such, Plaintiffs have failed to state a claim for violation of Section 25402 against Zinberg.

Gibson, Dunn &
Crutcher LLP

knowledge, or which sales were made when defendants were in possession of which inside information." *In re VeriSign, Inc., Derivative Litig.,* 531 F. Supp. 2d 1173, 1221 (N. D. Cal. 2007). Thus, Plaintiffs' claim for violation of Section 25402 fails.

### VII.     PLAINTIFFS HAVE FAILED TO ALLEGE A VIABLE CAUSE OF ACTION FOR WASTE OF CORPORATE ASSETS

Plaintiffs claim that the Individual Defendants committed corporate waste by paying bonuses to its executives and by incurring legal liability and costs to defend Defendants' various unlawful actions. Compl., ¶ 151. These allegations are not enough, however, to satisfy the "high hurdle required" in order to establish a claim for waste. *Brehm v. Eisner (In re Walt Disney Co. Derivative Litig.),* 906 A.2d 27, 75 (Del. 2006). Waste will arise only in the "rare 'unconscionable case where directors irrationally squander or give away corporate assets.'" *Id.* at 74. Plaintiffs must "shoulder the burden of proving that the exchange was so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Id.* A corporate waste claim must fail if "there is a *good faith judgment* that in the circumstances the transaction is worthwhile." *White v. Panic*, 783 A.2d 543, 554 (Del. 2001) (internal quotations omitted; emphasis original).

Plaintiffs' cause of action for corporate waste fails to meet the "high hurdle" required. Paying for legal expenses to defend a lawsuit is hardly the type of one-sided transaction that "no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Brehm,* 906 A.2d at 74. Nor are the payment of bonuses the type of "rare, unconscionable" conduct required to allege corporate waste. The board has broad discretion to determine employee compensation and such decisions are exercises of the board's business judgment. *Grimes v. Donaldson*, 673 A.2d 1207, 1215 (Del. 1996) ("If an independent and informed board, acting in good faith, determines that the services of a particular individual warrant large amounts of money . . . the board has made a business judgment."). Thus, Plaintiffs have failed to allege a claim for corporate waste.

**INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED DERIVATIVE COMPLAINT**

## VIII.    PLAINTIFFS HAVE FAILED TO ALLEGE A VIABLE CAUSE OF ACTION FOR UNJUST ENRICHMENT

The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.  *McPadden v. Sidhu*, 964 A.2d 1262, 1277 n.4 (Del Ch. 2008).  In order to state a claim for unjust enrichment, Plaintiffs must assert not just that the Individual Defendants profited from their sale of company stock, but that the Individual Defendants misused their knowledge to profit at the expense of innocent buyers of stock.  *Guttman v. Huang*, 823 A.2d 492, 505 (Del. Ch. 2003).  Plaintiffs must show that "each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information."  *Id.*   Delaware law requires a showing that the Individual Defendants acted with scienter.  *Id.*

Plaintiffs have failed to plead what the enrichment was, who the beneficiary was of that enrichment, how the enrichment is related to the alleged impoverishment, and whether there was a justification or not and why.  Also, like Plaintiffs' breach of fiduciary duty for insider trading claim, Plaintiffs have not properly pled scienter or that the Individual Defendants traded because of their possession of adverse, material, non-public information.  As such, Plaintiffs' claim for unjust enrichment fails.

## IX.    CONCLUSION

For the foregoing reasons, Defendants request that the Court dismiss Plaintiffs' Consolidated Complaint with prejudice.

Dated: January 22, 2010                    GIBSON, DUNN & CRUTCHER LLP

                                                                /S/

                                                        _____
                                                        By:    Joel A. Feuer

                                                        Attorneys for Defendants
                                                        DAVID ZINBERG, LAWRENCE Y.
                                                        KONG, CLAUDIA Y. LIU, LEON
                                                        KUPERMAN, PETER G. HANELT,
                                                        GARY Y. ITKIN, AND MAN JIT
                                                        SINGH

25

Gibson, Dunn & Crutcher LLP

1

## DECLARATION OF SERVICE

2

I, Elizabeth Sperry, declare as follows:

3

I am employed in the County of San Francisco, State of California; I am over the

4

age of eighteen years and am not a party to this action; my business address is

5

555 Mission Street, Suite 3000, San Francisco, 94105, in said County and State.  On

6

January 22, 2010, I served the within:

7

8

9

**INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED DERIVATIVE COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

10

11

to all interested parties as follows:

12

☑    **BY CM/ECF FILE & SERVE**:  on January 22, 2010**,** I served a true and

13

correct copy of the above listed document(s) electronically through CM/ECF

14

by uploading the electronic files for each of the above listed document(s). CM/ECF notifies all registered parties via e-mail.

15

16

I certify under penalty of perjury that the foregoing is true and correct, that the

17

foregoing document(s) were printed on recycled paper, and that this Declaration of

18

Service was executed by me on January 22, 2010, at San Francisco, California.

19

20

 /s/ Elizabeth Sperry_____
Elizabeth Sperry

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**INDIVIDUAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED DERIVATIVE COMPLAINT**