PETILLON HIRAIDE & LOOMIS LLP
MARK T. HIRAIDE, SBN 117868, mhiraide@phlcorplaw.com
21515 Hawthorne Boulevard, Suite 1260
Torrance, California 90503
Telephone: (310) 543-0500
Fax: (310) 543-0550

Attorneys for Defendant,
BIDZ.COM, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re BIDZ.COM, INC. DERIVATIVE LITIGATION | MASTER FILE NO. CV09-04984-PSG |
| This Document Relates To: ALL ACTIONS | **BIDZ.COM, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' DERIVATIVE COMPLAINT FOR FAILURE TO PLEAD DEMAND FUTILITY UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 23.1; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| | [Request for Judicial Notice and [Proposed] Order filed concurrently herewith] |
| | DATE :     April 26, 2010<br>TIME:     1:30 p.m.<br>JUDGE:     The Hon. Philip S. Gutierrez |
| | TRIAL DATE:     NONE SET |

NOTICE IS HEREBY GIVEN that on April 26, 2010, at 1:30 p.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Philip S. Gutierrez of the above-entitled Court, Courtroom 790, 255 East Temple Street, Los Angeles, CA 90012, Nominal Defendant Bidz.com, Inc., shall and hereby does move the Court for an order dismissing without leave to amend Plaintiffs' Derivative Complaint.

This Motion is made under Federal Rules of Civil Procedure Rules 12(b)(6) and 23.1 on the grounds that Plaintiffs failed to make a pre-suit demand on the Bidz.com Board of Directors, as required by Federal Rule of Civil Procedure Rule 23.1 and governing Delaware law, and have not justified this failure with particularized allegations of why making such a demand would have been futile. Accordingly, Bidz.com respectfully requests that this Court order dismissal with prejudice of Plaintiffs' Consolidated Shareholder Complaint pursuant to Federal Rules of Civil Procedure Rules 12(b)(6) and 23.1.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 14, 2010.

Dated: January 22, 2010                 PETILLON HIRAIDE & LOOMIS LLP

                                        /S/
                                        _____
                                        By:              Mark T. Hiraide

                                        Attorneys for Nominal Defendant
                                        BIDZ.COM, INC.

**BIDZ.COM, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' DERIVATIVE COMPLAINT FOR FAILURE TO PLEAD DEMAND FUTILITY**

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................4

II.  A SUMMARY OF PLAINTIFFS' SUBSTANTIVE ALLEGATIONS
     AND ALLEGATIONS OF DEMAND FUTILITY ......................................7

     A.   Plaintiffs' Allegations Of Wrongdoing.........................................7

     B.   Plaintiffs' Allegations Of Demand Futility..................................11

III. PLAINTIFFS FAILED TO ESTABLISH THAT DEMAND ON THE
     BIDZ BOARD WAS FUTILE ...................................................................13

     A.   Delaware Law Controls Whether Demand Would Have Been Futile....13

     B.   The *Rales* Test for Demand Futility Applies Here .................14

     C.   Plaintiffs' Conclusory Allegations That A Majority Of The Board
          Faces A Substantial Likelihood Of Liability Fails To Satisfy The
          *Rales* Test ................................................................................15

          1.   Plaintiffs' allegations against the Directors fall far short of a
               cognizable claim for failure to oversee the operations of
               Bidz. .................................................................................15

          2.   Membership on the Audit Committee is insufficient to
               establish likelihood of liability ......................................19

          3.   Allegations of Itkin's relationship with Zinberg and Itkin's
               compensation do not render him an interested director...............20

          4.   Defendant Zinberg's alleged domination does not render the
               Outside Directors unable to assess a demand............................22

IV.  CONCLUSION ..........................................................................................24

i

# TABLE OF AUTHORITIES

## Cases

*Aronson v. Lewis,*
    473 A.2d 805 (Del. 1984) ......................................................................... 11, 19

*Beam v. Stewart,*
    845 A.2d 1040 (Del. 2004) ............................................................................ passim

*Brehm v. Eisner,*
    746 A.2d 244 (Del. 2000) ..................................................................................... 11

*Guttman v. Huang,*
    823 A.2d 492 (Del. Ch. 2003) ................................................................. 3, 12, 16

*In re Caremark Int'l Derivative Litig.,*
    698 A.2d 959 (Del. Ch. 1996) ................................................... 13, 14, 15, 16

*In re Citigroup Shareholder Derivative Litig.,*
    964 A.2d 106 (Del. Ch. 2009) ......................................................................... 14, 15

*In re CNET Networks, Inc. Deriv. Litig.,*
    483 F.Supp.2d 947 (N.D. Cal. 2007) .......................................................... 16

*In re Computer Sciences Corporation Derivative Litigation,*
    2007 U.S. Dist. LEXIS 25414, No. 06-06512 (C.D. Cal. Mar. 26, 2007) 2, 3, 12, 17

*In re F5 Networks Inc.,*
    2007 U.S. Dist. LEXIS 57464, No. 06-794 (D. Wash. Aug. 2007) ........................ 16

*In re Merrill Lynch Litig.,*
    218 F.R.D. 377 (E.D.N.Y. 2003) ...................................................................... 19

*In re Sagent Tech. Derivative Litig.,*
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) .......................................................... 19

*In re Silicon Graphics Inc. Sec. Litig.,*
    183 F. 3d 970 (9th Cir. 1999) .......................................................... 1, 11, 12, 14

*In re Superior Industries Int'l, Inc.,*
    2007 U.S. Dist. LEXIS 97468 (C.D. Cal. 2007) ................................................ 12

*In re Verifone Holdings, Inc.,*
    2009 U.S. Dist. LEXIS 44138, No. 07-06347 (N.D. Cal. May 26, 2009) ....... passim

*In re Walt Disney Co. Derivative Litig.,*
    906 A.2d 27 (Del. 2006) ..................................................................................... 14

*Jones v. Jenkins,*
    503 F. Supp.2d 1325 (D. Ariz. 2007) .......................................................... 4, 18, 19

*Kamen v. Kemper Fin. Servs., Inc.,*
    500 U.S. 90, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991) ...................................... 11

*Kaster v. Modification System, Inc.,*
    731 F.2d 1014 (2d Cir. 1984) ...................................................................... 19

*Levine v. Smith,*
    591 A.2d 194 (Del. 1991) ............................................................................... 12

*Loveman v. Lander,*
    484 F. Supp. 2d 259 (S.D.N.Y. 2007) .......................................................... 16

ii

*Rales v. Blasband,*
  634 A.2d 927 (Del. 1993) ................................................................. 1, 2, 11

*Rattner v. Bidzos,*
  2003 Del. Ch. LEXIS 103 (Del. Ch. 2003) ........................................... 16

*Weiss v. Swanson,*
  948 A.2d 433 (Del. Ch. 2008) ............................................................. 19

*Wood v. Baum,*
  953 A.2d 136 (Del. 2008) ................................................................... 17

## Other Authorities

http://www.citronresearch.com/index.php/disclamer/ ................................. 8

http://www.pcaobus.org/Inspections/Public_Reports/index.aspx ................. 6

www.bidz.com ....................................................................................... 4

www.ripoffreport.com .......................................................................... 5

## Rules

Fed. R. Civ. P. 23.1(b)(3) ................................................................. 1, 11

**BIDZ.COM, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' DERIVATIVE COMPLAINT FOR FAILURE TO PLEAD DEMAND FUTILITY**

1

## MEMORANDUM OF POINTS & AUTHORITIES

2

## I.

3

## INTRODUCTION

4

Plaintiffs Farris Hassan and David Hughes, both purported shareholders of

5 nominal defendant Bidz.com, Inc. ("Bidz"), have failed to comply with the legal

6 requirements for bringing a derivative lawsuit against Bidz's officers and directors for

7 alleged breaches of fiduciary duty, corporate waste, unjust enrichment, and violation of

8 California securities laws. A shareholder seeking to sue derivatively on behalf of a

9 corporation must *first* bring the subject of litigation to the attention of the corporation's

10 board of directors and "demand" that the board take action to redress the harm.

11 Recognizing the fundamental principle that the directors manage the business and

12 affairs of corporations, the demand requirement is intended to provide a corporation's

13 board of directors with the primary opportunity to exercise its business judgment prior

14 to invoking the expensive and time-consuming process of litigation.

15

Where plaintiffs-shareholders fail to make the required demand on the board, the

16 plaintiffs must "allege with particularity" facts establishing why making such a

17 demand would have been futile. Fed. R. Civ. P. 23.1(b)(3). Federal courts look to the

18 law of the state of the company's incorporation to determine under what circumstances

19 a demand is excused. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F. 3d 970, 989-90

20 (9th Cir. 1999). Bidz is a Delaware corporation. The gravamen of the Complaint

21 concerns the Board's alleged failure to oversee Bidz's operations; and therefore, the

22 test for demand futility is governed by *Rales v. Blasband*, 634 A.2d 927, 934 (Del.

23 1993). In order to adequately allege demand futility and survive a motion to dismiss,

24 the shareholders must plead *particularized factual allegations sufficient to create a*

25 *reasonable doubt* that the board of directors, at the time the Complaint was filed, could

26 have properly exercised its independent and disinterested business judgment in

27 responding to the shareholders' demand. *Id.*; *see In re Computer Sciences*

28

4

*Corporation Derivative Litig.*, 2007 U.S. Dist. LEXIS 25414, No. 06-06512, at *11-16 (C.D. Cal. Mar. 26, 2007) (Pfaelzer, J.).

At the time Plaintiffs filed the first of their complaints, Bidz had a five-member Board consisting of defendants David Zinberg, Lawrence Kong, Peter Hanelt, Garry Itkin and Man Jit Singh. Three of the five – Hanelt, Itkin and Singh – were and are Outside Directors who were not officers or employees of the company. Zinberg served as the CEO and Kong served as the CFO in addition to their roles as directors. Consequently, Plaintiffs must show with particularized factual allegations that, under applicable Delaware law, a majority of the Board of Directors were not legally capable of assessing a demand to investigate and potentially pursue an action. *In re Computer Sciences*, 2007 U.S. Dist. LEXIS 25414 at *47 (dismissing complaint for failing to allege demand futility where four of seven defendant directors are not shown to be interested under *Rales*); *In re Verifone Holdings, Inc.*, 2009 U.S. Dist. LEXIS 44138, No. 07-06347 (N.D. Cal. May 26, 2009) (dismissing a similar complaint for failing to properly plead demand futility). This Motion to Dismiss establishes that Plaintiffs have failed to carry their burden of alleging particularized facts demonstrating a reasonable doubt that a majority of the Board could not have exercised its business judgment in responding to a demand.[1]

The Consolidated Complaint asserts four reasons why a demand on the Outside Directors would have been futile. First, Plaintiffs allege that all of the Defendants, including the Outside Directors, face a substantial likelihood of personal liability; and therefore, the Board could not be expected to independently evaluate such claims because they are self-interested in the outcome. However, Plaintiffs' allegations of wrongful conduct by all of the Defendants including the Outside Directors are far too

---

[1] Plaintiffs have failed to sufficiently plead liability as to any of the Defendants, but for purposes of this Motion, which argues that a presuit demand was not excused, Bidz need only show that a majority of the Board, in this case, Defendants Hanelt, Singh and Itkin, could have properly considered a presuit demand. The liability of the remaining Defendants is addressed in a separate motion filed concurrently.

BIDZ.COM, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' DERIVATIVE
COMPLAINT FOR FAILURE TO PLEAD DEMAND FUTILITY

general to satisfy the requirement of particularity.  The Complaint lacks the particularized factual allegations that the Defendants, including the Outside Directors, actually *knew* they were violating their fiduciary duties or *consciously* disregarded those duties.  Moreover, Delaware law requires that Plaintiffs establish the high culpability standard of **bad faith** in order to impose personal liability on the Director Defendants, including liability for any alleged failures to oversee the operations of the company.  The Complaint is simply devoid of factual allegations showing bad faith on the part of any of the directors.

Second, Plaintiffs allege that the Outside Directors, Hanelt, Itkin and Singh, were members of the Bidz Audit Committee during the Relevant Period.  Some of the substantive allegations concern Bidz's financial reporting and accounting practices – allegedly a province of the Audit Committee.  However, mere membership on a company's audit committee is insufficient to excuse the obligation to make a demand on Bidz's Board.  Courts have been explicit that general claims of committee membership without detailed allegations of what roles the directors played on the committee and *exactly* what information they discovered or would have discovered as committee members will not survive a motion to dismiss.  *Guttman v. Huang*, 823 A.2d 492, 507 (Del. Ch. 2003);  *In re Computer Sciences,* 2007 U.S. Dist. LEXIS 25414, at *27-*28.

Third, Plaintiffs assert that because Defendants Itkin and Zinberg have a history of personal and professional relationships and that Itkin received $110,000 in compensation as a director, he would be unwilling to make an independent assessment of liability against the Defendants as it may jeopardize his future compensation. Courts have rejected such contentions as inadequate to support the failure to make a demand on the board. *Beam v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004) (allegations of "personal friendship or a mere outside business relationship, standing alone, are insufficient to raise reasonable doubt about a director's independence"); *Jones v.*

1  *Jenkins*, 503 F. Supp.2d 1325, 1341 (D. Ariz. 2007) (independence not compromised

2  by fact director receives hundreds of thousands of dollars in compensation).

3         Finally, Plaintiffs' allegations that Defendant Zinberg, who along with his sister

4  owns 62% of Bidz, controls and dominates the Board such that the Outside Directors

5  would have been incapable of exercising their independent judgment are also

6  insufficient. Courts have rejected such claims even where the majority shareholder

7  owned as much as 94% of the shares of the corporation, personally appointed all of the

8  directors, and had extensive personal and business relationships with each of the board

9  members.  *Beam*, 845 A.2d at 1054; *In re Verifone Holdings*, 2009 U.S. Dist. LEXIS

10  44138, at *34-*35.

11         In sum, Plaintiffs have failed to plead an adequate justification under applicable

12  Delaware law for a departure from the standard practice of providing a company's

13  board with the opportunity to address the allegations of misconduct.  This failure is a

14  bar to this action and requires dismissal of the Complaint.

15                                          **II.**

16         **A SUMMARY OF PLAINTIFFS' SUBSTANTIVE ALLEGATIONS**

17                **AND ALLEGATIONS OF DEMAND FUTILITY**

18  **A.    Plaintiffs' Allegations Of Wrongdoing**

19         Bidz, an online jewelry retailer, is incorporated in Delaware.  Compl., ¶ 18.

20  Bidz conducts its business by holding on-line auctions of jewelry and other

21  merchandise.  *Id*. ¶ 37; *see generally* www.bidz.com.

22         Plaintiffs allege that the individual defendants, the officers and directors of

23  Bidz,[2] breached their fiduciary duties to Bidz and its shareholders, committed

24  corporate waste and were unjustly enriched as a result of a laundry list of alleged

25

26  _____

27     [2]  In addition to the members of the Board of Directors, Plaintiffs have also named
        Chief Operating Officer Claudia Liu and Chief Technology Officer Leon
28     Kuperman.  Compl., ¶¶ 20, 22.

wrongdoing with respect to the operations of the company and alleged wrongdoing by the Board in **overseeing those operations**:

     a.    Plaintiffs contend that Bidz engaged in or permitted others to engage in shill bidding in connection with Bidz's on-line auctions for jewelry and other items. Compl., ¶¶ 4, 37.  Shill bidding is defined as a bogus or fake bid by a bidder who does not want to purchase the item but hopes to drive up the item's selling price.  *Id*. ¶ 40. Plaintiffs contend that Bidz itself engaged in shill bidding in order to drive up the price of jewelry sales and its own revenues.  *Id.* ¶ 42.  Plaintiffs rely upon three "sources" of information to support their allegations that shill bidding exists:

     i.    Plaintiffs reference **three anonymous complaints** on the website, Ripoff Report.  Ripoff Report allows any person with an internet connection to post a grievance whether true or false, justified or imagined (Compl., ¶ 44)[3];

     ii.    Plaintiffs report that during one 2-1/2 hour period in a single day, they identified 100 bidders with "suspicious" account names (Compl., ¶ 47).  Plaintiffs do not and cannot allege that this sample is statistically significant and they implicitly concede that they cannot confirm that these bidders with suspicious account names submitted a single false bid (*id*.,¶ 48 ("**Assuming** that the [suspicious account names] are dummy accounts posting shill bids….)(emphasis added));

     iii.    Plaintiffs reference the federal securities complaint against Bidz that, in turn, references shill bidding based upon an alleged

---

[3] *See* www.ripoffreport.com which advises "Ripoff Report® is a worldwide consumer reporting Web site and publication, by consumers, for consumers, to file and document complaints about companies or individuals. While we encourage and even require authors to only file truthful reports, **Ripoff Report does not guarantee that all reports are authentic or accurate."**(emphasis added)

confidential witness who "declined to discuss the particulars of his

testimony with Plaintiffs" (Compl., ¶¶ 50-52).[4]

      b.    Plaintiffs also complain that Bidz employed "Stonefield Johnson, Inc.," as

its outside auditors, who according to Plaintiffs have been "harshly criticized" by the

Public Company Accounting Oversight Board ("PCAOB"). Compl., ¶ 56. Plaintiffs

have, of course, named the wrong auditing firm. Bidz's outside auditors are Stonefield

Josephson, Inc.

          i.    Plaintiffs do not allege that any criticisms by the PCAOB

related to Stonefield Josephson's work for Bidz;

          ii.    Plaintiffs fail to mention that Stonefield Josephson reviewed

the PCAOB's "criticisms" and certified that "nothing came to our

attention that caused us to believe that our previously issued auditor's

reports should not be relied on." RJN, Exh. B, at 22.

          iii.    Plaintiffs do not disclose that the PCAOB has made similar

criticisms of *every* major auditing firm in the country during the same

period as its report on Stonefield Josephson. *See*

http://www.pcaobus.org/Inspections/Public_Reports/index.aspx.[5]

      c.    Plaintiffs also complain that the defendants allegedly failed to ensure that

Bidz had an adequate system of internal operational controls. Compl., ¶ 61. In

support of this allegation, Plaintiffs point to the following operational issues:

---

[4] *Gomez v. Bidz.com, Inc.*, Central District Case No. 09-03216 CBM-EX.
Defendants Bidz and Zinberg moved to dismiss that action on December 4, 2009,
which is attached as Exhibit V to the Request for Judicial Notice ("RJN") filed
concurrently herewith. A hearing on the motion to dismiss is scheduled for March
22, 2010.

[5] *See* RJN Exhs. E, F, G and H, attaching public PCAOB inspection reports
(available on the PCAOB website) on the so-called "big four" accounting firms:
PricewaterhouseCoopers, dated, 10/18/2007; KPMG, dated 7/26/2007; and Ernst &
Young, dated 5/2/2007, and Deloitte & Touche, dated 6/14/2007.

9

i.      Bidz allegedly used a "suspect appraiser" to appraise jewelry sold on its site (Compl., ¶¶ 60, 62-66);

ii.     Defendants Zinberg and Itkin allegedly had "suspicious relationships" with persons who were felons or were otherwise "suspicious" (Compl., ¶¶ 61, 77, 78-79);[6]

iii.    Bidz allegedly permitted the use of inaccurate descriptions and photographs of items sold to customers so that customers may have been misled about what they were purchasing (Compl., ¶¶ 67-71); and

iv.     Bidz allegedly took measures to stop auction sales if the winning bid was below a certain price.  Plaintiffs acknowledge: "This practice was designed solely to ensure that Bidz would not lose money on the items it sold." (Compl., ¶ 73).  Plaintiffs' alleged "source" for this allegation is a confidential witness about which there is no information concerning his or her position, dates of employment or basis for knowledge (*Id.* ¶¶ 73-75).

d.      Bidz allegedly made false and misleading statements in its financial reporting in its press releases, investor conference calls and public filings with the SEC on August 13, 2007 and November 12, 2007.  Compl., ¶¶ 83-88.  Plaintiffs allege that Bidz's public statements were false and misleading because Bidz did not disclose to the public that its business operations were flawed in the manner summarized in points (a) through (c) above.  In addition, Plaintiffs contend that Bidz failed to reveal that it had entered into a related party transaction with LA Jewelers "pursuant to which LA Jewelers guaranteed Bidz a 20% gross profit upon Bidz's sale of LA Jeweler's products."  *Id.* ¶ 94.  Contrary to Plaintiffs' allegations, Bidz repeatedly disclosed the related-party transaction with LA Jewelers.  *See, e.g.*, RJN, Exhs. J, K, L, N.

---

[6] Defendant Itkin allegedly once owned an "illegal" strip club in 1999, more than six years before the company went public.  Compl., ¶ 78.  Bidz became a public company in May 2007.  RJN, Exh. I, at 233.

1   As further "support" for their allegations, Plaintiffs describe two November

2   2007 online articles published by Citron Research, a website, that claimed "rampant

3   shill bidding . . . had taken place during [Bidz's] online auctions" and "disclosed"

4   Bidz's "contacts with [a] convicted felon."  Compl., ¶¶ 9, 95-99.[7]  By its own

5   admission, Citron takes short positions in the stocks of the companies that are the

6   subject of its report, thereby "betting" that the stock price will fall.[8]  Plaintiffs also

7   allege that the SEC is investigating certain practices by Bidz, but Plaintiffs are not able

8   to report anything other than the fact that investigations have begun.  *Id*. ¶¶ 101-04.

9   Finally, Plaintiffs allege that Defendants Zinberg and Liu engaged in insider

10  trading and violated California securities laws by selling Bidz stock while in

11  possession of non-public information regarding the company's improper business

12  practices.  Compl., ¶¶ 112-14.

**B.    Plaintiffs' Allegations Of Demand Futility**

14  Plaintiffs did not make a demand on the Board prior to filing their action.

15  Compl., ¶ 120.

16  The Complaint does not make direct allegations that any of the Defendants,

17  including the three Outside Directors, were engaged in the operations that Plaintiffs

18  suggest were wrongful.  Rather, Plaintiffs simply list the alleged wrongdoing and

19  claim in a conclusory fashion that the "Board knew of serious wrongdoing . . . and/or

20  knew that the Company's internal controls were . . . inadequate."  Compl., ¶ 123.

21  Based solely on these allegations, Plaintiffs claim that the entire Board faces a

22

23  [7]  Citron admits:  "Citron Research makes no representations, and specifically
24  disclaims all warranties, express, implied, or statutory regarding the accuracy,
    timeliness, or completeness of any material contained in this site.  You should seek
    the advice of a security professional regarding your stock transactions."
25  http://www.citronresearch.com/index.php/disclamer/ (emphasis added).

26  [8]  Citron discloses on its site: "The principals of Citron Research most always hold a
    position in any of the securities profiled on the site.  Citron Research will not report
27  when a position is initiated or covered. Each investor must make that decision
    based on his/her judgment of the market."
28  http://www.citronresearch.com/index.php/disclamer/

substantial likelihood of liability.  *Id.*  ("For these reasons, defendants Zinberg, Kong, Hanelt, Itkin and Singh each face a sufficiently substantial threat of liability.").

Plaintiffs allege that making a demand on Bidz's Board would have been futile for a number of reasons:

1. Plaintiffs claim in a conclusory fashion that because the Board allegedly knew of and ignored "numerous improper practices" they face a substantial potential for liability such that demand on the entire Board would be futile.  Compl., ¶ 123.

2. Plaintiffs assert that because Defendants Hanlet and Singh were members of the audit committee that was responsible for reviewing (and approving) press releases and hiring an independent auditor with "questionable qualifications," they "face a substantial likelihood of liability" such that demand would be futile.  Compl., ¶ 124.[9]

3. Plaintiffs allege that because Defendant Itkin received $110,038 in compensation for being a Bidz director, there is reasonable doubt that he would take action against the other individual defendants and potentially jeopardize his compensation.  Compl., ¶ 127.  Plaintiffs also allege that because Itkin was the CFO of Bidz in the past[10] and may be implicated in an unrelated SEC investigation into Bidz's accounting practices, he could not independently consider a demand related to this subject matter.  *Id.*

4. Plaintiffs claim that because Zinberg and his sister "control over 62%" of Bidz's shares, Zinberg is able to exercise "domination and control" over Bidz such that demand on the remaining directors would have been futile.

---

[9] Plaintiffs do not allege that demand would be futile as to Defendant Itkin because of his service on the audit committee.  Defendant Itkin served on the audit committee from July 2006 to December 2006 and from May 2007 to the present.

[10] Itkin was Bidz's CFO for one year, from 1999-2000, well before any of the alleged improper practices.  RJN, Exh. O, at 446.

---

Compl., ¶ 122.  Plaintiffs also claim that Zinberg and Itkin are incapable of exercising their business judgment because of their personal relationship.  Compl., ¶ 126.

Plaintiffs allege two additional reasons—one directed specifically at Defendant Kong and one at Defendant Zinberg.[11]  However, because neither Kong nor Zinberg is an Outside Director, these allegations are irrelevant to this Motion.

That is the extent of Plaintiffs' conclusory allegations that demand on the Bidz Board would have been futile.  As a matter of Delaware law, as consistently applied by the courts in the Ninth Circuit and elsewhere, these allegations fail to demonstrate demand futility.

## III.

## PLAINTIFFS FAILED TO ESTABLISH THAT DEMAND ON THE BIDZ BOARD WAS FUTILE

Plaintiffs have not adequately shown that demand would have been futile with respect to a majority of the Board.  At a minimum, the three Outside Directors (Hanelt, Itkin and Singh) were independent, disinterested and capable of evaluating a demand with respect to Plaintiffs' claims.  Although Defendants Zinberg and Kong were also independent and could have also evaluated any demand, it is sufficient that any three of the directors–in this case, Hanelt, Itkin, or Singh–were capable of considering a demand because they constituted a majority of the Board.

### A.    Delaware Law Controls Whether Demand Would Have Been Futile

Bidz is a Delaware corporation.  Compl., ¶ 18.  Federal Rule of Civil Procedure 23.1 and Delaware law govern the determination of whether Plaintiffs have adequately

---

[11]  Plaintiffs allege because Defendant Kong's "principal professional occupation" is his Bidz employment and he has a personal relationship with his wife, Defendant Liu, a reasonable doubt exists as to whether Defendant Kong could have exercised his business judgment.  Compl., ¶ 128.  Plaintiffs claim that Defendant Zinberg faces a substantial likelihood of liability because he allegedly engaged in "illegal insider trading" and, therefore, is incapable of independently exercising his business judgment.  Compl., ¶ 125.

13

pled that demand would have been futile in this case. *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 96 (1991) ("[Courts] must apply the demand futility exception as it is defined by the law of the State of incorporation."); *Silicon Graphics*, 183 F.3d at 989-90 (holding that Rule 23.1 governs pleading requirements and the state law of incorporation governs circumstances under which demand is considered futile).

## B.    The *Rales* Test for Demand Futility Applies Here

Delaware has developed two tests to determine whether demand is excused. If a derivative suit challenges a decision made by a board of directors, the test announced in *Aronson v. Lewis* applies. *Aronson v. Lewis,* 473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000). Under the *Aronson* test, demand is excused if "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." 473 A.2d at 805. Alternatively, when a derivative suit does not challenge a particular action taken by the board as a whole, the test established in *Rales v. Blasband* applies instead. Under the *Rales* test, demand is excused only where "particularized factual allegations . . . create [a] reasonable doubt that . . . [the] board of directors could have properly exercised its independent and disinterested business judgment in responding to demand." *Rales,* 634 A.2d at 934.

The claims in this case fall under the *Rales* test. The gravamen of the Complaint is that Defendants failed to exercise oversight over the corporation and its management. *See, e.g.*, Compl., ¶ 3 ("the Individual Defendants . . . failed to maintain proper oversight over the online auction business,…); ¶ 4 ("Bidz has no safeguards to prevent, among other online bidding abuses… "shill bidding…."); ¶ 5 ("lack of inadequate internal controls and deficient business practices"), ¶ 6 (use of suspect appraisers in business); ¶ 7 (board permits management to have long-standing relationships with "convicted felons and other suspicious individuals"); and ¶ 29 (list of officer and director responsibilities regarding oversight of Bidz' operations).

14

Under Delaware law, the Company's directors are "entitled to a presumption that they were faithful to their fiduciary duties." *Beam*, 845 A.2d at 1048; *Silicon Graphics*, 183 F.3d at 989. Consequently, notice pleading and conclusory statements fail to meet the burden of particularized allegations, *Guttman v. Huang*, 823 A.2d 492, 499 (Del. Ch. 2003), and such statements will *not* be presumed true. *Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991); *see In re Computer Sciences*, 2007 U.S. Dist. LEXIS 25414 at *27-*28 (allegations that directors communicated information about backdating but concealed wrongful aspects is not sufficiently particularized to demonstrate knowledge of breach of duty); *In re Superior Industries Int'l, Inc.,* 2007 U.S. Dist. LEXIS, 97468, No. 06-7213, at *22-*23 (C.D. Cal. 2007) (Walter, J.) (failure to meet particularized fact standard where plaintiff did not allege specific roles and conduct of each individual defendant).

**C.    Plaintiffs' <u>Conclusory Allegations</u> That A Majority Of The Board Faces A Substantial Likelihood Of Liability Fails To Satisfy The *Rales* Test**

**1.    Plaintiffs' allegations against the Directors fall far short of a cognizable claim for failure to oversee the operations of Bidz.**

Plaintiffs assert that a majority of the Board, including the Outside Directors, face a substantial likelihood of liability because they were allegedly aware of the various problems with Bidz' business operations and did not take steps to correct the problems. Compl., ¶ 123. Plaintiffs allege in a conclusory fashion that the members of the Board, as a group, knew about the alleged wrongdoing based on the following facts: (i) that 44% of the winning bids in Bidz's auctions did not result in completed transactions (and therefore, according to Plaintiffs, had reason to believe that shill bidding was occurring)[12] and (ii) that Bidz's officers had long-standing relationships with

_____

[12] The declaration on which Plaintiffs base this allegation also reveals that auction participants are not required to supply payment information until after the auction and that Bidz lost money on 18-21% of its auctions from April 2007 to March 2008, suggesting that shill bidding was not preventing losses as Plaintiffs claim. *See* RJN, Exh. M, at 402.

1    "individuals and entities that were suspicious, to say the least." *Id*; *see also id.* ¶¶ 36, 45,

2    76-82, 124.  Plaintiffs also complain that the Board permitted Bidz to participate in shill

3    bidding; appoint an unqualified auditor; use a jewelry appraiser that did not satisfy

4    "minimum industry standards," provide customers with inaccurate descriptions and

5    pictures of the items they were purchasing and refuse to honor winning bids. *Id.* ¶ 123.

6    But these allegations are not particularized with respect to the Outside Director's

7    knowledge; they do not show when, how, or precisely what each outside director knew

8    about the alleged wrongdoing.  Consequently, the allegations that the Outside Directors

9    (Hanelt, Itkin and Singh) face a substantial likelihood of liability do not support the

10   conclusion that a demand on the Board would have been futile.

11         Courts have long held that conclusory allegations that directors failed to

12   adequately oversee a company's business operations, like the ones in this case, do not

13   give rise to a breach of fiduciary duty under Delaware law. *In re Caremark Int'l*

14   *Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996) (holding where a plaintiff has not

15   pled particularized facts that a majority of the board of directors participated in the

16   alleged wrongdoing, directorial liability would be premised on a lack of oversight).

17   Only allegations of "a sustained or systematic failure of the board to exercise

18   oversight—such as an utter failure to attempt to assure a reasonable information and

19   reporting system exists—will establish the lack of good faith that is a necessary

20   condition to liability." *Caremark*, 698 A.2d at 971.  In other words, a plaintiff is

21   required to plead that "the directors *knew* they were not discharging their fiduciary

22   obligations or that the directors demonstrated a *conscious* disregard for their

23   responsibilities." *In re Citigroup Shareholder Derivative Litig.*, 964 A.2d 106, 123 (Del.

24   Ch. 2009).  In fact, the lack of good faith must be "so egregious that a substantial

25   likelihood of directorial liability exists." *In re Silicon Graphics*, 183 F.3d at 990.

26         Moreover, under Delaware law, a company may protect directors from personal

27   liability for money damages unless there is a showing of **bad faith** on the part of the

28   individual director.  Bidz's Articles of Incorporation limit director liability to breaches

of fiduciary duty to the full extent permissible by Delaware law.  *See* RJN, Exh. A; Del. Code tit. 8 § 102(b)(7) (allowing corporations to eliminate monetary liability for a director's breach of the duty of care).  Because of this exculpatory clause, Plaintiff must plead specific facts that show a director's bad faith in disregarding responsibilities for overseeing the company's business operations.  *See Citigroup*, 964 A.2d at 125.  A director or officer acts with bad faith when he or she "intentionally acts with a purpose other than that of advancing the best interests of the corporation, . . . acts with the intent to violate applicable positive law, or . . . intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his [or her] duties."  *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006).

This extraordinarily high burden is made even more difficult because a plaintiff must plead a *substantial likelihood* of liability under this standard with factual particularity as to each challenged director.   In fact, **the standard for oversight liability is** "**possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment**." *In re Caremark Int'l Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996) (emphasis added).  Therefore, only in the most *egregious*—and *particularized*—instances of bad faith will plaintiffs be able to show a substantial likelihood of liability.  Plaintiffs have not come close to meeting this standard.

Plaintiffs have not pled *any* particularized facts with respect to Bidz's Outside Directors, Defendants Itkin, Hanelt and Singh, with the exception of their names, board positions, and years of service.  Compl., ¶¶ 21, 23-25.[13]  Plaintiffs rely solely on conclusory allegations that these defendants breached their fiduciary duties by virtue of their board positions.  Plaintiffs allege generalized critiques of Bidz's business model

_____

[13] Plaintiffs also allege that Defendant Itkin operated an illegal strip club in 1999, more than eight years prior to the "Relevant Period."  Plaintiffs do not provide particularized allegations regarding what Defendant Itkin knew about the alleged wrongdoing.

17

and practices, unsupported by factual allegations, and then allege that these defendants must have failed in their oversight responsibilities.  Such allegations are insufficient to demonstrate a substantial likelihood that the outside directors acted with bad faith:

> Again, the director defendants are not required to possess detailed information about all aspects of the business, nor are they expected to monitor or otherwise gauge all of the factors affecting inventory valuation.  Plaintiffs do not allege with particularity *how, when or which* of the directors became aware of the inventory valuations and how they failed to act upon this knowledge.

*In re Verifone Holdings, Inc.*, 2009 U.S. Dist. LEXIS 44138, No. 07-06347, at *20-*21 (N.D. Cal. May 26, 2009) (emphasis added).  Plaintiffs must plead with particularity when and how each director knew of or consciously disregarded his or her fiduciary duty because "'[m]ost of the decisions that a corporation, acting through its human agents, makes are, of course, not the subject of director attention'" and, consequently, directors normally are not "subject to personal liability for employee failures."  *Id.* at *22-*23 (quoting *Caremark*, 698 A.2d at 967-68).

In this case, Plaintiffs have not pled any particularized facts demonstrating that Defendants Hanelt, Singh, or Itkin participated in, had knowledge of, or consciously disregarded known risks of the alleged wrongdoing.  *See e.g.*, *Citigroup*, 964 A.2d 133 n.88 (allegations that director defendants "caused or allowed" certain statements do not make clear "how the board was actually involved in creating or approving the statements").  The Complaint is devoid of any of the required particular factual allegations that even suggest that there is a substantial likelihood that Defendants Hanelt, Singh, and Itkin acted in bad faith.

Nor can Plaintiffs tie the outside director Defendants to the alleged wrongdoings of the other defendants with conclusory allegations of a conspiracy.  In *Loveman v. Lauder*, 484 F. Supp. 2d 259 (S.D.N.Y. 2007), the plaintiff brought a similar *Caremark* claim, alleging the defendant directors allegedly conspired to issue false press releases to inflate the company's stock.  *Id.* at 263.  The court ignored the "entirely conclusory

18

1   allegation of conspiracy" because the plaintiff, like Plaintiffs here, failed to plead it

2   with any particularity.  *Id.* at 264 & n.24.   Accordingly, the Outside Directors do not

3   face a substantial likelihood of liability.

4           **2.    Membership on the Audit Committee is insufficient to establish**

5                   **likelihood of liability**

6           In addition to the boilerplate and conclusory allegations that Defendants Singh

7   Hanelt, and Itkin face a substantial likelihood of liability for being Board members,

8   Plaintiffs also allege that because Hanelt, Singh and presumably Itkin[14] were members

9   of the audit committee, they knew of and approved the alleged omissions.  Compl.,

10  ¶¶ 57, 124.  But pleading "mere membership" on a particular committee, without

11  "specific allegations as to [the] defendants' roles and conduct" is insufficient to

12  adequately plead demand futility.  *In re CNET Networks, Inc. Deriv. Litig.*, 483

13  F.Supp.2d 947, 953 (N.D. Cal. 2007); *see also In re F5 Networks Inc.*, 2007 U.S. Dist.

14  LEXIS 57464, No. 06-794, at *20-*42 (D. Wash. Aug. 2007) (allegations that audit

15  committee directors "must have known" are insufficient to adequately plead demand

16  futility); *Rattner v. Bidzos*, 2003 Del. Ch. LEXIS 103, at *47 (Del. Ch. 2003) (pleading

17  that various directors were on audit committee established nothing regarding

18  likelihood of their liability); *Guttman*, 823 A.2d at 507 (no demand futility shown

19  because the allegations did not establish that audit committee members could have

20  been expected to discover accounting regularities); *In re Computer Sciences*, 2007

21  U.S. Dist. LEXIS 25414, at *27-28.

22          Plaintiffs do not present any additional allegations for why Defendants Singh,

23  Hanelt or Itkin would have had or actually had knowledge of shill bidding or any other

24  alleged wrongdoing.  *See* Compl., ¶ 124 ("For the reasons discussed above, Hanelt and

25  Singh knew that the Company's business model was based upon shill bidding.")

26  ───────────────

27  [14] Plaintiffs do not allege demand would be futile as to Defendant Itkin because of his
       service on the audit committee.  Defendant Itkin served on the audit committee

28     from July 2006 to December 2006 and from May 2007 to the present.

19

1    Because Plaintiffs have not presented any particular factual allegations that

2    demonstrate Defendants Hanelt, Singh, or Itkin knew of the alleged wrongdoing, they

3    cannot demonstrate demand futility. *See e.g.*, *Wood v. Baum*, 953 A.2d 136, 142 (Del.

4    2008) ("The Board's execution of financial reports, without more, is insufficient to

5    create an inference that the directors had actual or constructive notice of any

6    illegality.").

7          Plaintiffs also blame Defendants Hanelt Singh and Itkin for hiring Bidz's

8    independent auditors who had a "troubling track record." Compl., ¶ 57.[15] This

9    "troubling track record" consisted of routine inspections by the PCAOB. Nearly every

10   accounting firm, including *all* of the "Big Four" firms, have similar "troubling track

11   record[s]" because they all have faced similar "deficiencies" from the PCAOB. *See*

12   RJN, Exhs. E, F, G and H. Moreover, Plaintiffs conveniently omit the last page of the

13   PCAOB's report, in which Stonefield certified that it examined all of the alleged

14   "deficiencies" and found that "nothing came to our attention that caused us to believe

15   that our previously issued auditor's reports [including the one for Bidz] should not be

16   relied on." RJN, Exh. B, at 22. Hiring and retaining such a firm hardly demonstrates

17   bad faith.

18          **3.    Allegations of Itkin's relationship with Zinberg and Itkin's**

19               **compensation do not render him an interested director**

20          As for Defendant Itkin's personal relationship with Defendant Zinberg, personal

21   relationships generally do not establish demand futility. *See Beam*, 845 A.2d at 1054

22   (rejecting claim that demand was futile because of Martha Stewart's extensive prior

23   business and personal relationships with three board members); *see also id.* at 1052

24   ("To create a reasonable doubt about an outside director's independence, a plaintiff

25   must plead facts that would support the inference that because of the nature of a

26   _____

27   [15] Bidz shareholders ratified the hiring of Stonefield Josephson by a vote of

28         12,677,921 in favor to 13,180 against. RJN, Exh. D, at 92.

relationship or additional circumstances other than the interested director's stock ownership or voting power, the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director."); *In re Verifone Holdings*, 2009 U.S. Dist. LEXIS 44138, at *32-33 (noting that long-standing business relationships, "which are common among directors of companies that do business together, have not been shown to be such close relationships that independence can be reasonably doubted"); *Jones v. Jenkins*, 503 F. Supp. 2d 1325, 1340 (D. Ariz. 2007) (same).

Plaintiffs have not identified any other circumstances that would suggest Defendant Itkin would risk his reputation to protect any relationship with Defendant Zinberg at the time this action was filed.[16] As a result, they have failed to demonstrate demand would have been futile as to Defendant Itkin.

Plaintiffs also contend Defendant Itkin is beholden to Bidz and Zinberg for his $110,000 in compensation. Compl., ¶ 127.[17] The general rule is that "demand is not excused simply because director receives compensation from the company." *Weiss v. Swanson*, 948 A.2d 433, 448 (Del. Ch. 2008). A director's compensation from a company is normally only relevant when/if the challenged action is the defendant's grant of the compensation to himself or herself. *Id.* And courts have noted that director compensation far exceeding $110,000 does not render a director unable to consider a presuit demand. *See In re Merrill Lynch Litig.*, 218 F.R.D. 377, 380-81 (E.D.N.Y. 2003) (independence not compromised by compensation of $160,000 to $260,000); *In re Sagent Tech. Derivative Litig.*, 278 F. Supp. 2d 1079, 1089 (N.D. Cal.

---

[16] Plaintiffs' allegations concerning Defendant Itkin's conduct as the past CFO (from 1999-2000) and his role with an allegedly illegal club in 1999, more than nine years before Plaintiffs should have made a demand on Bidz's Board, are largely irrelevant. This Complaint does not allege any accounting irregularities from 1999-2000.

[17] Bidz's website indicates that Defendant Itkin has been the CEO of AFB Trading One, a privately held distillery, since 1999.

21

1   2003) (compensation of $566,982 did not render director interested); *Jenkins*, 503 F.

2   Supp. 2d at 1341 (past officer not interested based on director compensation of

3   $50,000 per year).  Plaintiffs' conclusory allegation, which does not challenge the

4   grant of the compensation and is contradicted by Bidz's own website and SEC filings,

5   is thus insufficient to adequately plead demand futility.

6       **4.    Defendant Zinberg's alleged domination does not render the Outside**

7           **Directors unable to assess a demand**

8   Plaintiffs' allegations of Zinberg's domination and control of the Bidz Board are

9   insufficient to demonstrate that demand was futile on the remaining directors.

10  The Delaware Supreme Court addressed the issue of stock ownership and its

11  effect on whether demand in a particular case would be futile in *Aronson*, 473 A.2d at

12  816.  Stock ownership, even when it is a *majority* "does not strip directors of

13  presumptions of independence, that their acts have been taken in good faith and in the

14  best interests of the corporation."  *Id*.  To meet the required and rigorous pleading

15  standard, a plaintiff must allege facts that "would demonstrate that through personal or

16  other relationships the directors are beholden to the controlling person."  *Id.*  In

17  *Aronson*, and for other courts, allegations of controlling-share ownership and board

18  election have been found to be insufficient to allege demand futility.  *See id.* at 816-17;

19  *see Kaster v. Modification System, Inc.*, 731 F.2d 1014, 1020 (2d Cir. 1984) ("We are

20  thus unwilling to say that ownership of a majority of shares by the alleged wrongdoer

21  automatically makes a demand on the directors futile."); *Beam*, 845 A.2d at 1054

22  (rejecting claim that demand was futile because of Martha Stewart's 94 percent stock

23  ownership along with her business and personal relationships with three board

24  members); *In re Verifone Holdings*, 2009 U.S. Dist. LEXIS 44138, at *34-35 (noting

25  that stock ownership "does not suggest domination of the directors or a lack of director

26  independence due to financial interests").

27  That a "stockholder's control of a corporation does not excuse presuit demand

28  on the board without particularized allegations of relationships between the directors

and the controlling stockholder demonstrating that the directors are beholden to the stockholder" is true even if the "dominating" director has had past relationships and business dealings with the other directors. *Beam*, 845 A.2d at 1054. The past relationships must be "of a bias-producing nature;" "mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence." *Id.* at 1050; *see also id.* at 1051 (rejecting allegations of bias from Martha "Stewart and the other directors mov[ing] in the same social circles, attend[ing] the same weddings, develop[ing] business relationships before joining the board, and describ[ing] each other as 'friends,' even when coupled with Stewart's 94% voting power"); *see also In re Verifone Holdings*, 2009 U.S. Dist. LEXIS 44138 (rejecting controlling stock ownership and "long-term business relationships" and long-term service on the board of directors from before the company went public).

In this case, Plaintiffs failed to plead with particularity something more than a controlling interest and past business relationships that would suggest these directors are in any way "beholden" to Defendant Zinberg or that they would "be more willing to risk [their] reputation than risk the relationship with the interested director." *Beam*, 845 A.2d at 1052. Accordingly, Plaintiffs fail to adequately plead demand futility as to the Outside Directors solely due to the Zinbergs' stock ownership.

Plaintiffs' allegations of demand futility fail to measure up to the standards created by applicable Delaware law. They have not alleged with particularized facts a basis for concluding the Outside Directors face a substantial likelihood of liability. Each of the Outside Directors' membership on the Audit Committee, Zinberg's relationship with Itkin and Itkin's compensation, and Zinberg's stock ownership, without more, also do not, as a matter of Delaware law, disqualify the Outside Directors from the important role of being able to assess a demand from shareholders.

1

2

## IV.

## CONCLUSION

Plaintiffs have improperly attempted to usurp the role of managing Bidz by filing these lawsuits without making an adequate presuit demand.  Consequently, Plaintiffs can plead no reason why any of the Outside Directors could not have impartially considered a demand.  Demand, therefore, was not excused, and, as a result, Plaintiffs' Complaint must be dismissed.

Dated: January 22, 2010             PETILLON HIRAIDE & LOOMIS LLP

/S/

By:          Mark T. Hiraide

Attorney for Nominal Defendant
BIDZ.COM, INC.

---

24