O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#57 - 59

CIVIL MINUTES - GENERAL

| Case No. | CV 09-4984 PSG (Ex) | Date | April 27, 2010 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff:             Attorneys Present for Defendants:

Not Present                                              Not Present

**Proceedings:**     **(In Chambers) Order Granting Defendant Bidz.com, Inc.'s Motion to Dismiss**

Pending before the Court are a Motion to Dismiss filed by Defendant Bidz.com, Inc. and a Motion to Dismiss filed by several Individual Defendants. A hearing on the motion was held on April 26, 2010. After considering the moving and opposing papers and arguments presented at the hearing, the Court GRANTS Defendant Bidz.com, Inc.'s Motion to Dismiss, rendering the Individual Defendant's Motion to Dismiss MOOT.

I.     Background

Nominal Defendant Bidz.com, Inc. ("Bidz") is an online jewelry retailer that sells its products through online auctions. *See Consolidated Shareholder Derivative Complaint ("Compl.")* ¶ 2. The company is managed by a five-member Board of Directors ("the Board"), comprised of the following individuals: founder and Chief Executive Officer David Zinberg ("Zinberg"); Chief Financial Officer, Treasurer, and Secretary Lawrence Y. Kong ("Kong"); Peter G. Hanelt ("Hanelt"); Gary Y. Itkin ("Itkin"); and Man Jit Singh ("Singh"). From August 2007 to the present ("the relevant period"), Bidz allegedly engaged in several wrongful or deceptive business practices. The Board allegedly knew and approved of "shill bidding"[1] in

---

[1] "Shill bidding" is a scam in which "bidders use phony bids to drive up the price of auctioned items." *Compl.* ¶ 4; *see also id.* ¶ 40 ("Shill bidding (also known as 'bid rigging' or 'bid shilling') has been defined by Bidz's own Glossary of Terms as '[b]ogus bidding by an accomplice of the seller with the purpose of raising the price of an item.'" (citation omitted)

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#57 - 59**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | April 27, 2010 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

Bidz's online auctions to inflate the prices of Bidz's products, *see id.* ¶¶ 40-52, had an appraiser inflate the appraisals of Bidz's jewelry, *see id.* ¶¶ 62-66, and hired the auditing firm of Stonefield Josephson, Inc. ("Stonefield") despite criticism of the firm by the Public Company Accounting Oversight Board ("PCAOB"), *see id.* ¶¶ 56-58. During the relevant period, the Individual Defendants "failed to maintain proper oversight over the online auction business" and "had no safeguards to prevent . . . 'shill bidding.'" *See id.* ¶¶ 3-4.

In November 2007, the alleged problems at the company were revealed when the website Citron Research published two reports ("the Citron reports") that included accusations of shill bidding. *See id.* ¶ 99. In response, Bidz held a conference call after the first Citron report was published, during which Zinberg denied the allegations of shill bidding and defended the company's business practices. *See id.* ¶ 97. After publication of the Citron reports, the price of Bidz stock dropped approximately 27%. *See id.* ¶¶ 55. Additionally, three anonymous complaints were posted on the website Ripoff Report, which complained of shill bidding in Bidz auctions. *See id.* ¶ 44. As a result of the company's alleged lack of oversight and internal controls, Bidz also allegedly made false and misleading statements in press releases, in SEC filings, and during conference calls. *See id.* ¶¶ 83-88; *see also Opp.* 7:6-8. Before the accusations of shill bidding surfaced, Zinberg and Defendant Claudia Liu ("Liu") allegedly engaged in insider trading based on their knowledge of the company's alleged deceptive practices. *See Compl.* ¶ 112.

Plaintiffs Farris Hassan and David Hughes (collectively, "Plaintiffs") were Bidz shareholders during the relevant period, and they brought a derivative action against Bidz and several Individual Defendants[2] for engaging in the allegedly deceptive business practices. Plaintiffs assert causes of action for breach of fiduciary duty, insider selling, violation of California Corporations Code § 25402, waste, and unjust enrichment. On January 22, 2010, Bidz

---

(alteration in original)). As noted in the Complaint, the Bidz website included a warning about shill bidding: "You are strictly prohibited from placing bids or causing bids to be placed on any Product for the purpose of artificially increasing or otherwise manipulating the bidding process on Bidz.com or the bid price of any Product listed on the Site, or influencing user behavior on Bidz.com." *Id.* ¶ 41.

[2] The Individual Defendants are the five members of the Board of Directors in addition to Chief Operating Officer Liu and Chief Technology Officer Leon Kupperman ("Kupperman") (collectively, "the Individual Defendants").

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#57 - 59**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | April 27, 2010 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

and the Individual Defendants filed separate motions to dismiss. Bidz's motion is based on Plaintiffs' failure to make any pre-suit demand on the Board of Directors, and the Individual Defendants' motion is based on Plaintiffs' alleged failure to state a claim.[3] The Court considers each motion separately.

III.   Bidz's Motion to Dismiss

Bidz's moves to dismiss Plaintiffs' derivative action pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1 on the grounds that Plaintiffs failed to make any pre-litigation demand on Bidz's Board of Directors and failed to adequately allege, with the requisite specificity, that demand would have been futile.

   A.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted. Although detailed factual allegations are not required to survive a Rule 12(b)(6) motion to dismiss, a complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

---

[3] Bidz and the Individual Defendants also filed a Joint Request for Judicial Notice, which includes several public filings with the Securities and Exchange Commission ("SEC"), PCAOB reports, and various court documents related to litigation against Bidz. Plaintiffs oppose the joint request, with the exception of Exhibit B (the PCAOB report for Stonefield that is referenced in the Complaint) and Exhibits A, C-D, I-L, and N-U (the SEC filings) to the extent that the Court does not take judicial notice of the truth disclosed in those filings. *See Pls.' Opp. to Defs.' Joint Request for Judicial Notice* 3:14-17, 4:5-8. To the extent the Court references them in this Order, the Court takes judicial notice of the facts contained in the exhibits attached to the joint request. *See* Fed. R. Evid. 201(b) (permitting judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *see also Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (noting that courts "may consider documents referred to in the complaint or any matter subject to judicial notice, such as SEC filings").

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#57 - 59**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | April 27, 2010 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

  In resolving a Rule 12(b)(6) motion, the Court must engage in a two-step analysis. *See id.* at 1950. The Court must first accept as true all non-conclusory, factual allegations made in the complaint. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). Based upon these allegations, the Court must draw all reasonable inferences in favor of the plaintiff. *See Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). After accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the Court must then determine whether the complaint alleges a plausible claim to relief. *See Iqbal*, 129 S. Ct. at 1950. In determining whether the alleged facts cross the threshold from the possible to the plausible, the Court is required "to draw on its judicial experience and common sense." *Id.* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*

  Additionally, the Federal Rules of Civil Procedure impose unique pleading requirements in derivative actions. Under Federal Rule of Civil Procedure 23.1, a shareholder seeking to vindicate the interests of a corporation may bring a derivative action on the corporation's behalf only if the shareholder pleads with particularity that a demand was made on the board or the reasons why a demand would have been futile. *See* Fed. R. Civ. P. 23.1(b)(3). In the context of a pre-suit demand, directors are entitled to a presumption that they fulfilled their fiduciary duties, and "the burden is upon the plaintiff in a derivative action to overcome that presumption" with particularized factual allegations. *Beam v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004).

  B. <u>Discussion</u>

  In the Complaint, Plaintiffs acknowledge that no pre-suit demand was made upon Bidz's Board of Directors. *See Compl.* ¶ 120. Bidz moves to dismiss Plaintiffs' Complaint for failure to allege demand futility as required under Rule 23.1. According to Bidz, Plaintiffs were required under Delaware law to include particularized factual allegations to create a reasonable doubt that a majority of the board could have remained independent and disinterested in responding to their demand, and Plaintiffs have failed to adequately allege that a majority of the Board of Directors was incapable of responding to a demand. *See Mot.* 4:20-5:18. While Bidz insists that Directors Zinberg and Kong were sufficiently independent and disinterested, the motion to dismiss focuses upon Plaintiffs' allegations as they relate to Directors Hanelt, Itkin, and Singh (collectively, "the Outside Directors")—directors who were not employees of the company. S*ee id.* 13:17-20

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#57 - 59**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | April 27, 2010 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

("Although Defendants Zinberg and Kong were also independent and could have also evaluated any demand, it is sufficient that any three of the directors—in this case, Hanelt, Itkin, or Singh—were capable of considering a demand because they constituted a majority of the Board."). In the Opposition, Plaintiffs argue that an alternative test under Delaware law should apply, and that the Complaint satisfies either test. *See Opp.* 2:6-9. For the reasons that follow, the Court finds that Plaintiffs' allegations of demand futility are insufficient under Delaware law, and thus dismissal of the Complaint is warranted pursuant to Rule 12(b)(6) and Rule 23.1.

    1.    <u>The *Rales* Test Applies in this Case</u>

As the Federal Rules do not specify the type of allegations required to adequately allege that demand would have been futile, the Court is required to look to the law of the state of incorporation in defining the demand futility requirement. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96, 108-09, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991). The parties do not dispute that the Court must apply Delaware law because Bidz was incorporated in Delaware. *See Mot.* 4:17-20; *Opp.* 9 n.9 (citing *Kamen*, 500 U.S. 90). Depending upon the nature of the allegations in the derivative action, Delaware courts apply one of two demand futility tests. *See Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ("the *Aronson* test"); *Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ("the *Rales* test").

Delaware courts apply the *Aronson* test if the derivative action challenges a particular decision or transaction of the corporation's board of directors. *See Rales*, 634 A.2d at 933 (citing *Pogostin v. Rice*, 480 A.2d 619, 624 (Del. 1984)); *In re Computer Sciences Corp. Derivative Litig.*, 2007 WL 1321715, at *4 (C.D. Cal. Mar. 26, 2007) (Pfaelzer, J.). Under the *Aronson* test, the plaintiff must plead particularized facts that create a reasonable doubt that either (1) the directors were disinterested and independent, or (2) the challenged transaction was the product of a valid exercise of business judgment. *See Aronson*, 473 A.2d at 812.

On the other hand, Delaware courts apply the *Rales* test if the derivative suit challenges an act that does not constitute a business decision by the board, or in circumstances in which the board composition has since changed. *See Computer Sciences*, 2007 WL 1321715, at *4; *see also Guttman v. Huang*, 823 A.2d 942, 499-500 (Del. 2003) (applying the *Rales* test where the plaintiffs alleged that director defendants individually breached their fiduciary duties to the corporation and failed "to ensure that [the corporation] had in place the financial control systems

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#57 - 59**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | April 27, 2010 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

necessary to ensure compliance with applicable accounting standards."). The *Rales* test simply requires the plaintiff to offer particularized allegations to create a reasonable doubt as to the first prong of the *Aronson* test:

> Thus, a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand. If the derivative plaintiff satisfies this burden, then demand will be excused as futile.

*Rales*, 634 A.2d at 934.

    The Court finds that the *Rales* test applies in this case. The gravamen of Plaintiffs' Complaint is that the Board failed to act, or otherwise permitted the alleged wrongdoing to persist. *See Compl.* ¶ 3 ("[T]he Individual Defendants . . . *failed to maintain proper oversight* over the online auction business, which resulted in seriously deficient controls." (emphasis added)); *id.* ¶ 4 ("Notably, Bidz has *no safeguards* to prevent, among other online bidding abuses described herein, 'shill bidding.'" (emphasis added)); *id.* ¶ 5 ("Bidz's *lack of adequate internal controls* and deficient business practices has resulted in hundreds of consumer complaints." (emphasis added)); *id.* ¶ 10 ("[Bidz's suspicious] relationships have damaged and will continue to damage Bidz's corporate image and are indicative of a *lack of necessary internal controls*." (emphasis added)). As Plaintiffs' allegations concern a failure of the Board to act properly, the Complaint does not challenge a particular business decision or transaction of which the Board approved and, thus, the *Rales* test should be applied. *See In re Verifone Holdings, Inc.*, No. 07-6347, 2009 WL 1458233, at *5 (N.D. Cal. May 26, 2009) (applying the *Rales* test where the complaint alleged that several "red flags" should have alerted the board of directors to the lack of internal controls at the corporation).

    In the Opposition, Plaintiffs contend that the *Aronson* test should apply because, according to Plaintiffs, the Complaint alleges that the Board had actual knowledge of the wrongdoing and "consciously" decided not to act. *See Opp.* 9:6-9. This semantic shift in emphasis, however, does not alter the Court's conclusion.[4] Plaintiffs do not allege, with the requisite specificity, that

---

[4] Allegations that the Board "consciously" decided not to act, without more, does not transform the Board's failure to exercise proper oversight into an affirmative "decision." *See Reply* 4 n.2

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#57 - 59**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | April 27, 2010 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

a majority of the Board had actual knowledge of any of the wrongdoing alleged in the Complaint. First, Plaintiffs group the directors together through conclusory allegations of conspiracy, *see, e.g.*, *Compl.* ¶ 31, and generalized allegations against the "Individual Defendants" as a whole, *see, e.g.*, *id.* ¶ 36 ("The Individual Defendants knew that the Company faced substantial risk in engaging in these practices . . . . Accordingly, these improper practices, which were well known and approved by the Individual Defendants, formed an essential part of the Company's business model."). Such general allegations fall below the particularized pleading requirements of Rule 23.1. *See Verifone Holdings*, 2009 WL 1458233, at *7 ("Plaintiffs do not allege with particularity *how, when or which* of the directors became aware of the [business problems] and how they failed to act upon this knowledge." (emphasis added)).

Second, Plaintiffs do not adequately allege how the Outside Directors, a majority of the Board, came to know of the alleged wrongdoing and participated in the Board's purported decision not to act. The only specific allegations against the Outside Directors involve allegations that they served on the company's Audit Committee, and that they selected an independent auditor and drafted press releases and public filings. *See id.* ¶ 124. The alleged wrongdoing in selecting the Stonefield auditing firm does not directly establish the Outside Directors' knowledge of or complicity in the shill bidding. *See Computer Sciences*, 2007 WL 1321715, at *6 ("Plaintiffs have not alleged with particularity which actions, omissions or communications would connect the members and actions of the various committees to each other and to the board as a whole, except to list the committees' and board's membership and intersecting fiduciaries duties and responsibilities under [the corporation's] bylaws.").

In support of their argument that *Aronson* should apply, Plaintiffs rely heavily on *Abbott Laboratories Derivative Shareholders Litigation*, 325 F.3d 795 (7th Cir. 2001). In *Abbott Labs*, the Seventh Circuit applied Delaware law and held that the *Rales* test did not apply where the directors knew of the alleged wrongdoing and had a corporate governance structure in place that would have responded to the wrongdoing but for a conscious decision not to act. Plaintiffs seek to apply the *Aronson* test because the Board allegedly received warnings of shill bidding and other problems but similarly failed to act. *See Opp.* 9:9-12 (characterizing the holding of *Abbott*

---

("Such a technique, if approved, would render *Rales* meaningless."). Indeed, *Rales* applies where "the subject of the derivative suit is not a business decision of the board," *Verifone Holdings*, 2009 WL 1458233, at *4, and according to Plaintiffs' position, any "failure to act" could be transformed into a "decision" to avoid the *Rales* test.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#57 - 59

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | April 27, 2010 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

*Labs* as "applying [the] *Aronson* test to [the] demand futility inquiry where the board consciously failed to act in the face of known violations" (emphasis omitted)).

*Abbot Labs*, however, is distinguished from this case. The alleged knowledge of wrongdoing in *Abbott Labs* was a result of "formal certified" warning letters sent from the U.S. Food and Drug Administration directly to the board, detailing continued regulatory violations by the company. *See id.* at 799. In contrast, Plaintiffs allege that the Board was warned of shill bidding and other problems by the publication of the Citron reports and the three anonymous posts on Ripoff Report. *See Compl.* ¶¶ 95-99. Such warnings, and others alleged in the Complaint, are more akin to "red flags" that the Board "should have recognized" rather than particularized allegations that each member of the Board "knew" of the alleged problems.

Additionally, the board in *Abbott Labs* had a corporate governance structure in place to safeguard against continued violations and had adopted a Voluntary Compliance Plan to address the FDA's concerns. *See Abbott Labs.*, 325 F.3d at 806. In contrast, Plaintiffs allege that Bidz lacked sufficient internal controls to protect against shill bidding and other problems. Thus, even if Plaintiffs sufficiently alleged that the directors knew about the alleged wrongdoing, a conscious decision of the board as a whole cannot be imputed to their alleged failure to act. *See id.* at 806 ("*Where there is a corporate governance structure in place*, we must then assume the corporate governance procedures were followed and that the board knew of the problems and decided no action was required. Therefore, we cannot agree that the *Rales* test is applicable in this particular factual situation." (emphasis added)). As Plaintiffs have failed to offer particularized allegations (1) that the directors knew of the alleged wrongdoing or (2) that Bidz had a corporate governance structure in place to respond to such wrongdoing, Plaintiffs have failed to allege a particular business decision or transaction by the Board that would warrant the application of the *Aronson* test.[5] Therefore, the Court applies the *Rales* test.

---

[5] The other case provided by Plaintiffs, *In re TASER Intern. Shareholder Derivative Litig.*, No. 05-0123, 2006 WL 687033 (D. Ariz. Mar. 17, 2006), is similarly distinguishable. In that case, the plaintiffs alleged that the *entire board* benefited personally from insider trading, while Plaintiffs in this case do not offer particular allegations that a majority of the Board had knowledge of the alleged wrongdoing or made any affirmative decisions to approve of the alleged wrongdoing. Moreover, Plaintiffs allege that only one of the directors, Zinberg, engaged in insider trading.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#57 - 59**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | April 27, 2010 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

      2.      Plaintiffs' Factual Allegations of Futility

Under the *Rales* test, Plaintiffs must offer particularized factual allegations that raise a reasonable doubt that a majority of the board was capable of properly exercising independent and disinterested business judgment in responding to a demand. *See Rales*, 634 A.2d at 934. *Rales* requires more than the Complaint's conclusory allegation that demand would have been futile because a "majority of the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action." *Compl.* ¶ 121. In the motion, Bidz focuses exclusively on the three Outside Directors to argue that Plaintiffs fail to offer particularized allegations that a majority of the Board would have been incapable of assessing a demand. Thus, the Court evaluates the Plaintiffs' allegations as to Directors Itkin, Hanelt, and Singh. In particular, the Court evaluates their independence and disinterestedness.

      a.      Were the Outside Directors Independent?

Director independence exists when the director's "decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *See Aronson*, 473 A.2d at 816. In alleging that the Outside Directors were not independent, Plaintiffs allege that the Board was controlled and dominated by Zinberg. According to the Complaint, Zinberg is alleged to have dominated the Board due to his 62% ownership interest in the company (when combined with his sister's shares). *See Compl.* ¶ 122. Allegations of Zinberg's ownership interest are combined with allegations that he made others feel "nervous." To cite the only example in the Complaint, one confidential witness who worked in the Bidz billing department during the relevant period claimed that Zinberg "was always walking around, looking over people's shoulders and making them feel nervous." *Id.* The Complaint goes on to allege that Zinberg's dominance extended beyond the billing department to the Board of Directors, and that his fellow directors would also be nervous, "particularly when it comes to deciding whether to file a lawsuit against him." *Id.*

Such allegations, however, are insufficient to conclude that the Outside Directors would not have been able to exercise an independent business judgment in considering a demand. First, Zinberg's alleged ownership interest does not establish his dominance over the Board. *See Beam*, 845 A.2d at 1051 (finding that Martha Stewart's 94% ownership interest, even when combined with allegations of a professional and social relationship with a fellow director, were insufficient to rebut the presumption that the director remained independent from her influence). Second,

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#57 - 59**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | April 27, 2010 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

Plaintiffs' allegation that the other directors "would" be nervous if faced with a demand is not buttressed by any particularized facts. *See Compl.* ¶ 122. Allegations that Zinberg made employees in the billing department nervous, without more, are insufficient to demonstrate that Zinberg made the Outside Directors nervous. Therefore, Plaintiffs' allegations that Zinberg dominated the Board are insufficient to rebut the presumption that the Outside Directors were independent.

While Plaintiffs' allegations are insufficient as to Hanelt and Singh, Plaintiffs do offer more particular allegations as to Itkin, but they are equally unavailing. Plaintiffs allege that Itkin and Zinberg have had a "long history of relationship with each other [sic]," including working together at various businesses. *Compl.* ¶ 126. Though Itkin and Zinberg have a personal friendship and a professional history, such allegations are insufficient to suggest that Itkin is incapable of independently assessing a demand. *See Beam*, 845 A.2d at 1052 ("[F]or presuit demand purposes, friendship must be accompanied by *substantially more* in the nature of serious allegations that would lead to a reasonable doubt as to a director's independence." (emphasis added)). As the Delaware Supreme Court explained,

> Allegations that [Martha] Stewart and the other directors moved in the same social circles, attended the same weddings, developed business relationships before joining the board, and described each other as 'friends,' even when coupled with Stewart's 94% voting power, are insufficient, without more, to rebut the presumption of independence. They do not provide a sufficient basis from which reasonably to infer that [three of the directors] may have been beholden to Stewart.

*Beam*, 845 A.2d at 1051. As in *Beam*, Plaintiffs merely allege a "long history of personal and professional interconnecting relationships" between Itkin and Zinberg, *Compl.* ¶ 126, and they fail to offer particularized factual allegations that their friendship or Zinberg's "dominance" has ever caused Itkin to be biased in favor of Zinberg at the expense of the company.[6]

---

[6] In the Opposition, Plaintiffs allege for the first time that Bidz granted Zinberg stock options to purchase 6 million shares of common stock that vested immediately. *See Opp.* 18:15-21. Plaintiffs surmise that this demonstrates Zinberg's domination and control of the Board. *See id.* at 18:21-19:2. However, as Defendants observe in the Reply, the Court is confined to the well-pled allegations in the Complaint and cannot consider any new allegations offered in the papers.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#57 - 59**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | April 27, 2010 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

Itkin also allegedly received $110,038 from Bidz in 2008 for serving as a director, and Plaintiffs allege that he is *dependent* on this compensation due to his inability to find employment outside of Bidz due to his alleged past illegal acts. *See id.* ¶ 127. However, such allegations are insufficient. *See Jones v. Jenkins*, 503 F. Supp. 2d 1325, 1338 n.5 (D. Ariz. 2007) ("Even if members of the Compensation Committee were interested, the fact that they controlled Jenkins' salary would not, without more, call into question Jenkins' independence. . . . If these allegations were sufficient to show lack of independence, every inside director would be disabled from considering a pre-suit demand."). Indeed, the allegations that Itkin was dependent on his salary are not substantiated by "particularized" factual allegations. Allegations that Itkin once owned an illegal strip club while serving as the CFO of Bidz, *see Compl.* ¶ 78, do not add "substantially more" to Plaintiffs' other allegations, *see Mot.* 21 n.16 ("Plaintiffs' allegations concerning Defendant Itkin's conduct as the past CFO . . . and his role with an allegedly illegal [strip] club in 1999, more than nine years before Plaintiffs should have made a demand on Bidz's Board, are largely irrelevant."). For these reasons, Plaintiffs have failed to offer particularized factual allegations that raise a reasonable doubt that the Outside Directors were independent.

        b.      <u>Were the Outside Directors Disinterested?</u>

Director interest exists where the director "will receive a personal financial benefit from a transaction that is not equally shared by the stockholders [or] where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." *Rales*, 634 A.2d at 936. Plaintiffs allege that the directors were not sufficiently disinterested because they all faced "a sufficiently substantial threat of liability." *See Compl.* ¶ 124. When evaluating the disinterestedness of the Outside Directors, the Court considers the likelihood that they would have exposed themselves to personal liability if they responded to a demand. *See Guttman*, 823 A.2d at 503 ("[T]he key inquiry in the *Rales* analysis is whether the plaintiffs have pled facts that show that these five directors face a sufficiently substantial threat of personal liability to compromise their ability to act impartially on a demand."); *see also Opp.* 20:8-11 ("To meet this standard [of director interest], which is sufficient to satisfy demand futility, unlike a 'mere threat of liability,' which is not . . . .").

Under its Articles of Incorporation, Bidz limits director liability to breaches of fiduciary duty to the full extent permitted under Delaware law. *See Request for Judicial Notice*, Ex. A, Art. 5, § 6 (copy of Bidz's Articles of Incorporation). Such a limitation of liability is permitted under Delaware law, *see* 8 Del. Code § 102(b)(7), which permits exculpation for fiduciary breaches

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#57 - 59**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | April 27, 2010 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

unless made in bad faith, *see In re Walt Disney Co. Derivative Litigation*, 906 A.2d 27, 65 (Del. 2006) ("Section 102(b)(7) . . . authorizes Delaware corporations, by a provision in the certificate of incorporation, to exculpate their directors from monetary damage liability for a breach of the duty of care. That exculpatory provision affords significant protection to directors of Delaware corporations. The statute carves out several exceptions, however, including most relevantly, 'for acts or omissions not in good faith.'" (citation omitted) (internal footnote omitted)). Therefore, in order to establish that a demand on the Board would have been futile given the potential for personal liability, Plaintiffs must provide particularized allegations that any alleged fiduciary breaches were made (a) by a majority of the Board and (b) in bad faith.

In order to allege bad faith, Plaintiffs must offer particularized allegations that the Outside Directors intended to breach their fiduciary duties or acted with a "conscious disregard" toward them. *See Disney*, 906 A.2d at 67. As discussed previously, however, Plaintiffs fail to allege, with the requisite factual specificity, that each of the Outside Directors had actual knowledge of the shill bidding and other alleged wrongs. *See Verifone Holdings*, 2009 WL 1458233, at *7 ("[T]he director defendants are not required to possess detailed information about all aspects of the business . . . . Plaintiffs do not allege with particularity *how, when or which* of the directors became aware of the [business problems] and how they failed to act upon this knowledge." (emphasis added)). Moreover, Plaintiffs allege that the Outside Defendants, by virtue of their positions on the Audit Committee, must have known of the problems at the company. *See Compl.* ¶ 124. This argument is carried over in the Opposition, where Plaintiffs argue:

> Plaintiffs also provide further particularized allegations as to Audit Committee members Hanelt, Singh and Itkin and their approval of the alleged misconduct. Hanelt, Singh and Itkin were responsible for: (1) reviewing and discussing information presented in the Company's earnings press releases; (ii) overseeing the financial reporting processes of the Company; (iii) reviewing the Company's internal controls; (iv) evaluating the qualifications of and appointing the independent auditor; and (v) ensuring that the Company abides by all relevant laws. *Thus, Hanelt, Singh and Itkin knew that the Company's business model was based upon shill bidding, and that the practice was rampant throughout the Company*.

*Opp.* 22:4-12 (emphasis added).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#57 - 59

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | April 27, 2010 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

Allegations of a director's responsibilities, however, are insufficient to establish the director's bad faith. *See Computer Sciences*, 2007 WL 1321715, at *9 (finding that general allegations of the Audit Committee's responsibilities were insufficient to support allegations that the Audit Committee members knew of the alleged wrongdoing); *id.* (noting that the presumption that directors were faithful to their fiduciary duties "precludes the Court from assuming that the Audit Committee members violated their fiduciary duties while performing their statutory duties"). As Plaintiffs have failed to make particularized factual allegations that the Outside Directors faced a substantial likelihood of personal liability if they acted upon a demand, the Court finds that Plaintiffs have failed to raise a reasonable doubt as to their disinterest in assessing such a demand.

        c.    Summary

Plaintiffs have failed to plead particularized factual allegations to raise a reasonable doubt that the Outside Directors would have been independent and disinterested when considering a demand to investigate the alleged wrongdoing. Therefore, Plaintiffs' allegations of demand futility are insufficient.

    C.    Conclusion

As Plaintiffs have failed to adequately allege that demand would have been futile, the Court does not excuse their failure to make a pre-suit demand upon the Board. Accordingly, the Court GRANTS Defendant Bidz's motion to dismiss with leave to amend.

IV.    The Individual Defendants' Motion to Dismiss

The Individual Defendants move to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim. In their Notice of Motion, the Individual Defendants acknowledge that their motion would be rendered moot if the Court grants Bidz's motion to dismiss for failure to comply with Rule 23.1. As the Court grants Bidz's motion to dismiss, the Individual Defendants' motion to dismiss is hereby rendered MOOT.

V.    Conclusion

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#57 - 59**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | April 27, 2010 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

    Based on the foregoing, the Court GRANTS Defendant Bidz's motion to dismiss, rendering the Individual Defendants' motion to dismiss MOOT. Plaintiffs may file an amended complaint within 21 days of this Order. If Plaintiffs fail to file an amended complaint by May 18, 2010, the action will be dismissed with prejudice.

    **IT IS SO ORDERED.**