O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#86/89
JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):          Attorneys Present for Defendant(s):

Not Present                                              Not Present

**Proceedings:** (In Chambers) Order Granting Bidz.com's Motion to Dismiss

Pending before the Court are Nominal Defendant Bidz.com, Inc.'s Motion to Dismiss, and a Motion to Dismiss filed by Individual Defendants. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving and opposing papers, the Court GRANTS Defendant Bidz.com, Inc's Motion to Dismiss, rendering the Individual Defendant's Motion to Dismiss MOOT.

I.     Background

Nominal Defendant Bidz.com, Inc. ("Bidz") is an online jewelry retailer that sells its products through online auctions. *See First Amended Consolidated Shareholder Derivative Complaint ("FAC")* ¶ 2. The company is managed by a five-member Board of Directors ("the Board"), comprised of the following individuals: founder and Chief Executive Officer David Zinberg ("Zinberg"); Chief Financial Officer, Treasurer, and Secretary Lawrence Y. Kong ("Kong"); Chairman of the Board Peter G. Hanelt ("Hanelt"); Former Chief Financial Officer Gary Y. Itkin ("Itkin"); and Man Jit Singh ("Singh") (collectively, the "Board of Directors"). *Id.* ¶¶ 23-30. Also relevant are non-board members Chief Technology Officer and President Kuperman ("CTO" or "Kuperman") and Chief Operating Officer Claudia Liu ("COO" or "Liu") (along with the Board of Directors, the "Individual Defendants"). *Id.* ¶¶ 26-27. From August 2007 to the present ("the relevant period"), Bidz allegedly engaged in several wrongful or deceptive business practices. The Board allegedly knew and approved of "shill bidding"[1] in

---

[1] "Shill bidding" is a scam in which "fake bids" are placed causing "legitimate bidders to pay more for an item than they otherwise would have." *FAC* ¶ 34.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#86/89
JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

Bidz's online auctions to inflate the prices of Bidz's products, *see id.* ¶¶ 40-62, 64, 69-77, had an appraiser inflate the appraisals of Bidz's jewelry, *see id.* ¶¶ 85-90, used inaccurate descriptions and photographs of the items sold to customers, *see id.* ¶¶ 91-98, used phony error messages and other improper practices to ensure that its items would not be sold below a certain price, *see id.* ¶¶ 99-101, sold counterfeit merchandise, *see id.* ¶¶ 102-105, and hired the auditing firm of Stonefield Josephson, Inc. ("Stonefield") despite criticism of the firm by the Public Company Accounting Oversight Board ("PCAOB"), *see id.* ¶¶ 78-84. During the relevant period, the Individual Defendants "knew about the existence of shill bidding (and other improper practices) at Bidz, and yet took no action to prevent or remedy the situation." In other words, the Board failed to oversee the operations of the company.

In November 2007, the alleged problems at the company were revealed when the website Citron Research published two reports ("the Citron reports") that included accusations of shill bidding. *See id.* ¶ 6, 55-62. Zinberg held a conference call after the first Citron report was published, during which he denied the allegations of shill bidding and defended the company. *See id.* ¶ 57. Following publication of the Citron reports, the price of Bidz stock dropped approximately 27%. *See id.* ¶ 59. In addition to the Citron reports accusing Bidz of allowing shill bidding in its auctions, three anonymous complaints were posted on the website Ripoff Report accusing Bidz of shill bidding, and the Better Business Bureau gave Bidz an "F" rating based on complaints of inflated jewelry valuations and fake merchandise. *See id.* ¶¶ 49-52. As a result of the company's alleged lack of oversight and internal controls, Bidz also allegedly made false and misleading statements in press releases, in SEC filings, and during conference calls. *See id.* ¶¶ 106-23. Before the accusations of shill bidding surfaced, Zinberg and Liu allegedly engaged in insider trading based on the knowledge of the company's alleged deceptive practices. *See id.* ¶¶ 169-82.

Plaintiffs Farris Hassan and David Hughes (collectively, "Plaintiffs") were Bidz shareholders during the relevant period, and they brought a derivative action against Bidz and the Individual Defendants for engaging in the allegedly deceptive business practices. Plaintiffs assert causes of action for breach of fiduciary duty, insider selling, violation of California Corporations Code § 25402, waste, and unjust enrichment.

On April 27, 2010, the Court granted Bidz's motion to dismiss for failure to adequately allege that pre-suit demand on the Board of Directors would have been futile. *See* Dkt. #78 (the "April 27 Order"). The Court gave Plaintiffs leave to amend and a Verified Amended Consolidated Shareholder Derivative Complaint was filed on May 27, 2010. *See* Dkt. #81. Not

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#86/89**
**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

long after, Bidz filed the pending motion to dismiss for failure to make pre-suit demand and the Individual Defendants filed a motion to dismiss for failure to state a claim.[2] *See* Dkts. #86, 89. The Court considers Bidz's and the Individual Defendants' motions separately.

II.  Bidz' Motion to Dismiss

Bidz's moves to dismiss Plaintiffs' derivative action pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1 on the grounds that Plaintiffs failed to make any pre-litigation demand on Bidz's Board of Directors and failed to adequately allege, with the requisite specificity, that demand would have been futile.

A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted. Although detailed factual allegations are not required to survive a Rule 12(b)(6) motion to dismiss, a complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

In resolving a Rule 12(b)(6) motion, the Court must engage in a two-step analysis. *See id.* at 1950. The Court must first accept as true all non-conclusory, factual allegations made in the complaint. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,

---

[2] Bidz and the Individual Defendants also filed a Joint Request for Judicial Notice, which includes several public filings with the Securities and Exchange Commission ("SEC"), and various court documents related to litigation against Bidz. *See* Dkt. #91. Plaintiffs oppose the joint request to the extent that the Court takes judicial notice of the truth disclosed in those filings. *See Pls.' Opp. to Defs.' Joint Request for Judicial Notice*, Dkt. #97. To the extent the Court references them in this Order, the Court takes judicial notice of the facts contained in the exhibits attached to the joint request. *See* Fed. R. Evid. 201(b) (permitting judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *see also Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (noting that courts "may consider documents referred to in the complaint or any matter subject to judicial notice, such as SEC filings").

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#86/89
JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). Based upon these allegations, the Court must draw all reasonable inferences in favor of the plaintiff. *See Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). After accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the Court must then determine whether the complaint alleges a plausible claim to relief. *See Iqbal*, 129 S. Ct. at 1950. In determining whether the alleged facts cross the threshold from the possible to the plausible, the Court is required "to draw on its judicial experience and common sense." *Id.* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*

Additionally, the Federal Rules of Civil Procedure impose unique pleading requirements in derivative actions. Under Federal Rule of Civil Procedure 23.1, a shareholder seeking to vindicate the interests of a corporation may bring a derivative action on the corporation's behalf only if the shareholder pleads *with particularity* that a demand was made on the board or the reasons why a demand would have been futile. *See* Fed. R. Civ. P. 23.1(b)(3). In the context of a pre-suit demand, directors are entitled to a presumption that they fulfilled their fiduciary duties, and "the burden is upon the plaintiff in a derivative action to overcome that presumption" with particularized factual allegations. *Beam v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004).

B.  Discussion

As in the original Complaint, the Amended Complaint includes Plaintiffs' acknowledgement that no pre-suit demand was made upon Bidz's Board of Directors. *See FAC* ¶ 187. Bidz moves to dismiss the First Amended Complaint on the same grounds that warranted dismissal of the Complaint; that Plaintiffs were required under Delaware law to include particularized factual allegations to create a reasonable doubt that a majority of the board could have remained independent and disinterested in responding to their demand, and that Plaintiffs have failed to adequately allege that a majority of the Board of Directors were incapable of responding to a demand. *See Mot.* 5:5-11. For the following reasons, the Court dismisses the case pursuant to Rule 12(b)(6) and Rule 23.1.

1.  Whether the *Rales* Test or the *Aronson* Test Applies in this Case

In the April 27 Order, the Court applied the *Rales* demand futility test. *See* Dkt. #78. Nothing alleged by Plaintiffs changes the Court's reasoning in the April 27 Order and the Court

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#86/89
JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

again applies the *Rales* test to determine whether pre-suit demand on the Board of Directors is excused as futile.

The Federal Rules of Civil Procedure do not specify the type of allegations required to adequately allege that demand would have been futile. As a result, a federal court is required to look to the law of the state of incorporation defining the demand futility requirement. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96, 108-09, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991). As determined in the April 27 Order, Delaware law applies because Bidz is incorporated in Delaware. *See* Dkt. #78 at 5. Depending upon the nature of the allegations in the derivative action, Delaware courts apply one of two demand futility tests: the *Aronson* test or the *Rales* test. *See Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ("the *Aronson* test"); *Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ("the *Rales* test").

Delaware courts apply the *Aronson* test if the derivative action challenges a particular decision or transaction of the corporation's board of directors. *See Rales*, 634 A.2d at 933 (citing *Pogostin v. Rice*, 480 A.2d 619, 624 (Del. 1984)); *In re Computer Sciences Corp. Derivative Litig.*, 2007 WL 1321715, at *4 (C.D. Cal. Mar. 26, 2007) (Pfaelzer, J.). Under the *Aronson* test, the plaintiff must plead particularized facts that create a reasonable doubt that either (1) the directors were disinterested and independent, or (2) the challenged transaction was the product of a valid exercise of business judgment. *See Aronson*, 473 A.2d at 812.

On the other hand, Delaware courts apply the *Rales* test if the derivative suit challenges an act that does not constitute a business decision by the board, or in circumstances in which the board composition has since changed. *See Computer Sciences*, 2007 WL 1321715, at *4; *see also Guttman v. Huang*, 823 A.2d 942, 499-500 (Del. 2003) (applying the *Rales* test where the plaintiffs alleged that director defendants individually breached their fiduciary duties to the corporation and failed "to ensure that [the corporation] had in place the financial control systems necessary to ensure compliance with applicable accounting standards."). The *Rales* test simply requires the plaintiff to offer particularized allegations to create a reasonable doubt as to the first prong of the *Aronson* test:

> Thus, a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#86/89**
**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

independent and disinterested business judgment in responding to a demand. If the derivative plaintiff satisfies this burden, then demand will be excused as futile.

*Rales*, 634 A.2d at 934.

Plaintiffs' Amended Complaint suggests that demand on the Board would have been futile for the following reasons: (1) Zinberg dominates and controls the board; (2) each member of the board faces a substantial likelihood of liability related to alleged shill bidding practices; (3) each member of the board faces a substantial likelihood of liability for using Stonefield as Bidz's accounting auditor; (4) Zinberg faces a substantial likelihood of liability for insider trading; (5) Zinberg and Itkin's relationship raises a reasonable doubt about the independence of each; and (6) Itkin faces a substantial likelihood of liability for his conduct as CFO from 1999 to 2000. *See FAC* ¶¶ 183-95. In their Opposition, Plaintiffs admit that this lawsuit does not challenge a particular, affirmative decision made by Bidz's Board of Directors; instead, it is a case about the Board allegedly having "actual knowledge of illegal wrongdoing" without any attempt "to prevent or remedy the situation." *See Opp'n* 9:21-25; *see also Opp'n* 10, n.10 ("the Complaint is replete with allegations that the Individual Defendants knew of the Company's illegal behavior but consciously chose to take no action to fix the problems"). Nevertheless, Plaintiffs maintain that the *Aronson* test should apply, not the *Rales* test. The Court disagrees.

"'Where the subject of a derivative suit is not a business decision of the Board but rather a violation of the Board's oversight duties,' the trial court *must* apply the *Rales* test." *In re Intel Corporation Derivative Litigation*, 621 F. Supp. 2d 165, 170 (D. Del. 2009) (emphasis added) (quoting *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008)). Plaintiffs balk at Bidz's suggestion that the *Rales* test applies to considered inaction by a Board of Directors, and cites to the Seventh Circuit's decision in *In re Abbott Labs. Derivative Shareholders Litigation*, 325 F.3d 795 (7th Cir. 2001) for the proposition the *Aronson* test applies where a corporation's Board of Directors makes an informal but informed and conscious decision not to act. *See Opp'n* 9:21-10:3 (citing *In re Abbott Labs*, 325 F.3d at 805-07). This Court is required to apply Delaware law, however, and as noted by a district court in Delaware facing a similar question in light of *Abbott Labs*, "the Court is unable to identify any Delaware authority holding that the *Aronson* standard should be applied to allegations of conscious inaction." *In re Intel*, 621 F. Supp. 2d at 173. In fact, "Delaware courts have explained that '[w]here the complaint does not address an action taken by the board . . . or alleges that the board failed to act, the inquiry narrows" because a court "cannot address the business judgment of an action not taken and, therefore, should concern itself with what is now known as the *Rales* test." *Id*. (citing *In re info USA, Inc.*

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#86/89
JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

*S'holders Litig.*, 953 A.2d 963, 986 (Del. Ch. 2007)); *see also Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995) ("[P]laintiff does not challenge any specific board action that approved or ratified these alleged wrongdoings. Therefore, Plaintiff must satisfy the one step test announced in *Rales* to demonstrate that he was excused from making a demand.").[3] No matter how Plaintiffs frame their arguments in opposition, the Amended Complaint alleges demand futility based on the inaction of the Board of Directors and Delaware law requires that the Court apply the *Rales* test in the absence of a board decision or transaction to determine whether pre-suit demand would have been futile. *See Opp'n* 15:13-14 (characterizing the Board of Directors' inaction as a "fail[ure] to investigate").

      2.      <u>Plaintiffs' Factual Allegations of Futility</u>

Under the *Rales* test, Plaintiffs must offer *particularized* factual allegations that raise a reasonable doubt that a majority of the Board of Directors was capable of properly exercising independent and disinterested business judgment in responding to a demand. *See Rales*, 634 A.2d at 934. At the time the lawsuit was commenced, the Board of Directors was comprised of Defendants Zinberg, Kong, Hanelt, Itkin, and Singh.[4] In order to show demand futility, there

---

[3] A number of other courts have examined the Seventh Circuit's ruling in *Abbott Labs* and declined to follow it in circumstances similar to those here. *See, e.g., Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005) (declining to apply the *Aronson* demand futility test where the plaintiff argued that the "board's conduct constituted an active decision not to act rather than inaction" because, in the opinion of the Third Circuit, the *Abbott* decision involved an interpretation of Illinois law that was not faithful to existing Delaware law); *In re Fannie Mae Derivative Litig.*, 503 F. Supp. 2d 9, 18 n.6 (D.D.C. 2007) ("Plaintiffs assert that this Court should apply the standard used by the Seventh Circuit in [*Abbott*]. However, because the Seventh Circuit applied Illinois state law, that case is not applicable here where Delaware law controls."). Moreover, the Court explained in the April 27 Order why the facts of this case are different from the facts in *Abbott Labs*. The new allegations do not alter this Court's earlier determination, which remains an independent reason to not apply the Seventh Circuit's reasoning in *Abbott Labs*.

[4] As was the case in this Court's April 27 Order, the Court primarily focuses its inquiry on Hanelt, Itkin or Singh as Bidz's "Outside Directors." It does so despite the fact that Plaintiffs amended the Complaint to indicate that Itkin should be considered an "inside" director based on his service to the company as CFO from February 1999 to December 2000. *See FAC* ¶ 24. As indicated, however, Itkin gave up that post in 2000 and has been only a director since July 2003.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#86/89
JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

must be a reasonable doubt that three of the five were capable of exercising independent and disinterested business judgment. At the outset, the Court notes that the Amended Complaint's conclusory allegation that demand would have been futile because a "majority of the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action" is patently insufficient. *See FAC* ¶ 187.

        a.        <u>Were the Directors Independent?</u>

Director independence exists when a director's "decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816. When alleging lack of independence in the demand futility context, "a plaintiff charging domination and control of one or more directors must allege particularized facts manifesting a direction of corporate conduct in such a way as to comport with the wishes or interests of the [person] doing the controlling." *Id.* (internal quotation and citation omitted). According to the Amended Complaint, the Board of Directors is dominated and controlled by Zinberg as primarily shown by (1) his 62% ownership interest in the company (when combined with his sister's shares), and (2) the Board of Directors' issuance to him of stock options to purchase six million shares of common stock that vested immediately. *See FAC* ¶¶ 189(a)-(b).

In the April 27 Order, this Court considered the allegation that a majority of the Board lacked independence because of Zinberg's 62% ownership interest. *See* Dkt. #78, at 9-10. Plaintiffs' allegation in the Amended Complaint has not changed, nor has the Court's analysis. A majority ownership interest alone cannot establish dominance over the Board. *See Beam*, 845 A.2d at 1051 (finding that Martha Stewart's 94% ownership interest, even when combined with allegations of a professional and social relationship with a fellow director, were insufficient to rebut the presumption that the director remained independent from her influence); *see also Aronson*, 473 A.2d at 816 (even majority ownership "does not strip directors of presumptions of independence, that their acts have been taken in good faith and in the best interests of the corporation"). Similarly, Plaintiffs' claim that Itkin is beholden to Zinberg because they have had a "long history of relationships with each other, both personal and professional," is unavailing. *See FAC* ¶ 194. As the Court explained in the April 27 Order, "[t]hough Itkin and Zinberg have a personal friendship and a professional history, such allegations are insufficient to suggest that Itkin is incapable of independently assessing a demand." *See* Dkt. #78 at 10 (quoting *Beam*, 845 A.2d at 1052, to explain that "for presuit demand purposes, friendship must

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#86/89**
**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

be accompanied by *substantially more* in the nature of serious allegations that would lead to a reasonable doubt as to a director's independence"). Plaintiffs again fail to offer particularized factual allegations that Itkin was biased in favor Zinberg at the expense of the company.

     For the first time the Amended Complaint, Plaintiffs also allege that the members of the Board were beholden to Zinberg as shown by their willingness to grant him stock options to purchase six million shares of common stock that vested immediately. *See FAC* ¶ 189. This transaction took place in 2004, a time when Singh and Hanelt were not yet on the Board. *See id.* ¶ 147. There are three primary problems with Plaintiffs' allegation that the 2004 Board of Directors' decision to award stock options to Zinberg shows those Board members' lack of independence for purposes of demand in this case. First, while the Amended Complaint indicates that Kong and Itkin were members of the 2004 Board of Directors, *see FAC* ¶ 147, there is no indication that Kong and Itkin voted to give Zinberg those stock options, *see id*. It could hardly be the case that Kong and Itkin are beholden to Zinberg if they voted to *not* give Zinberg the options. Failing to state whether Kong and Itkin voted to award the options falls well short of the requirement to provide "particularized" factual allegations related to director independence. *Aronson*, 473 A.2d at 816.

     Moreover, even if Itkin and Kong did vote to award those options, Delaware law has erected a high hurdle to challenging compensation packages. *See Brehm v. Eisner*, 746 A.2d 244, 263, 66 (Del. 2000) (absent corporate waste, "[i]t is the essence of business judgment for a board to determine if a particular individual warrants large amounts of money;" otherwise, courts are invited "to become super-directors, measuring matters of degree in business decision making and executive compensation"). In fact, a proper challenge to a compensation package requires a showing of bad faith or "an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade." *Id.* at 263. Here, Plaintiffs allege only that Zinberg was awarded stock options, not that the options were awarded in bad faith, for an improper purpose or without any consideration. Finally, Bidz correctly points out that even if Kong and Itkin were beholden to Zinberg in 2004—the time of the stock option award—there is no particularized allegation suggesting that Zinberg's undue influence continued to 2009, when this case was filed. *See Mot.* 10:19-21.

     For these reasons, Plaintiffs have failed to offer particularized factual allegations that raise a reasonable doubt that a majority of the Board of Directors were independent.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#86/89
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

      b.      Were the Directors Disinterested?

      A reasonable doubt as to director disinterest will also excuse demand in shareholder derivative cases. *See Rales*, 634 A.2d at 934. Director interest exists where the director "will receive a personal financial benefit from a transaction that is not equally shared by the stockholders [or] where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders." *Id.* at 963. As was the case in the original Complaint, Plaintiffs, in the Amended Complaint, allege that the directors on the Board were not sufficiently disinterested at the time this case was filed because they all faced "a sufficiently substantial threat of liability." *See FAC* ¶ 190. When evaluating the disinterestedness of directors, the Court considers the likelihood that they would have exposed themselves to personal liability if they responded to a demand. *See Guttman*, 823 A.2d at 503 ("the key inquiry in the *Rales* analysis is whether the plaintiffs have pled facts that show that these five directors face a sufficiently substantial threat of personal liability to compromise their ability to act impartially on a demand"). The "mere threat of personal liability" for a director's actions is by itself insufficient to show that a director is not disinterested. *See Rales*, 634 A.2d at 936 (citing *Aronson*, 473 A.2d at 815).

      Under its Articles of Incorporation, Bidz limits director liability to breaches of fiduciary duty to the full extent permitted under Delaware law. *See January 22, 2010 Request for Judicial Notice*, Ex. A, Art. 5, § 6 (Articles of Incorporation); *July 12, 2010 Request for Judicial Notice*, Ex. D, at 13 (2009 SEC Form 10-K); *see also Opp'n* 17:12-18:2 (recognizing the limitation on Bidz's director's liability via the "exculpatory clause"). Such a limitation of liability is permitted under Delaware law, *see* 8 Del. Code § 102(b)(7), which permits exculpation for fiduciary breaches unless made in bad faith, *see In re Walt Disney Co. Derivative Litigation*, 906 A.2d 27, 65 (Del. 2006) ("Section 102(b)(7) . . . authorizes Delaware corporations, by a provision in the certification of incorporation, to exculpate their directors from monetary damage liability for a breach of the duty of care. That exculpatory provision affords significant protection to directors of Delaware corporations. The statute carves out several exceptions, however, including most relevantly 'for acts or omissions not in good faith.'" (citation omitted)). Therefore, in order to establish that demand on the Board would have been futile given the potential for personal liability, Plaintiffs must provide particularized allegations that any alleged fiduciary breaches were made (a) by a majority of the Board and (b) in bad faith. In order to allege bad faith, Plaintiffs must offer particularized allegations that the Directors intended to breach their fiduciary duties or acted with a "conscious disregard" toward their fiduciary duties. *See Disney*, 906 A.2d at 67; *see also Stone v. Ritter*, 911 A.2d 362, 370 (Del. Ch. 1996) (Where

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#86/89**
**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

"directors are exculpated from liability except for claims based on 'fraudulent,' 'illegal' or 'bad faith' conduct, a plaintiff must also plead particularized facts that demonstrate the directors acted with scienter, i.e., that they had actual or constructive knowledge that their conduct was legally improper.").

     Plaintiffs allege in the Amended Complaint that demand is excused based on director interest because: (1) each member of the board faces a substantial likelihood of liability in connection with shill bidding at Bidz; (2) each member of the board faces a substantial likelihood of liability for retaining or allowing Bidz to use "suspect" accountants; (3) Zinberg faces a substantial likelihood of liability for insider trading;[5] and (4) Itkin faces liability for past accounting practices that may be exposed in this case. Even assuming that Zinberg and Kong were not disinterested by their status as "inside" directors or Zinberg's insider trading,[6] on which

---

[5] As mentioned earlier, to show that demand is excused, Plaintiffs need only show a reasonable doubt as to the independence of disinterest of three of the five directors. The Court's focus on the three Outside Directors makes Plaintiffs' claim related to Zinberg's insider trading largely irrelevant.

[6] Plaintiffs cite to *Beam v. Stewart*, 845 A.2d 1040 (Del. 2004) and argue that because they have identified Zinberg and Kong as "inside directors," Zinberg and Kong are necessarily interested and Plaintiffs need only show that one of Itkin, Hanelt or Singh are also interested. The Court disagrees with Plaintiffs' reading of *Beam*, but agrees that Zinberg and Kong were incapable of properly considering Plaintiffs' demand and, as indicated above, the Court focuses on the "outside" directors. The Court in *Beam* only considered whether the "outside directors" in that case were interested because there was no appeal of the Chancellor's determination that the "insider directors" were interested. Moreover, Delaware law asks only whether a director ("inside" or "outside") can make a decision "based on the corporate merits of the subject before the board rather than extraneous considerations or influences" and entitles both insider and outside directors to the presumption that they act independently, while faithful to their fiduciary duties. *See Beam v. Stewart*, 833 A.2d 961, 977-78 (Del. Ch. 2003) ("*Beam I*") (explaining that the burden to show lack of independence is on the Plaintiff-regardless of the insider or outsider status of the director-but finding that employment as president and chief operating officer with a substantial salary of $980,000 made a director not independent); *see also Fagin v. Gilmartin*, 432 F.3d 276, 283 (3d Cir. 2005) ("The fact that a director is also an officer, without more, is insufficient to establish the director's interest or lack of independence."). It is for this reason, not merely because Kong was an "inside" director, that the Court finds that Kong's position at Bidz as CFO, for which he earned over $1.5 million in 2007 and 2008, makes him interested for

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#86/89
JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

the Court expresses no opinion, Plaintiffs have failed to show that the "Outside" directors—a majority of the board—were not disinterested at the time this case was filed.

i.  Director Liability for the Alleged Shill Bidding

The gravamen of Plaintiffs' demand futility allegation related to shill bidding is that each individual director had knowledge of the existence of shill bidding at Bidz, "yet failed to take any action to curb the shill bidding." *FAC* ¶ 190. As many Delaware courts have explained, however, this type of "failure of oversight" theory is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Intern. Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). To prove such a claim, a plaintiff is required to demonstrate gross negligence, such that "the directors were conscious of the fact that they were not doing their jobs." *Guttman*, 823 A.2d at 505-06. Plaintiffs must allege particularized facts demonstrating that the directors "knew that they were not discharging their fiduciary obligations" and failed to act "in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities." *Stone*, 911 A.2d at 369-70. Here, Plaintiffs fail to allege particularized facts demonstrating that the Outside Directors actually knew about the alleged shill bidding, failed to act in light of such knowledge, and did so knowing their conduct breached their fiduciary duties to the company or otherwise broke the law.

First, Plaintiffs suggest that Itkin, Hanelt and Singh each knew about the existence of shill bidding as a result of a few different market reports that included coverage of Bidz. For example, Plaintiffs claim that "[t]he Board members were on notice of the shill bidding practice at Bidz, at the absolute latest, when the Citron reports emerged in November 2007." *FAC* ¶ 190(g). As mentioned, Citron Research published two reports online in November of 2007 stating that "[o]ne common complaint that we see online is 'shill bidding'" and "Citron Research believes the bidding process at Bidz.com leaves a lot of unanswered question." *Id.* ¶¶ 55-56. The day after the first Citron report was released, Zinberg held a conference call and indicated that the report was "untruthful," but was unable to confirm "whether bidders are bona fide until after an auction closes." *Id.* ¶¶ 56-57. In addition to the Citron report, the Amended Complaint also alleges the directors knew about shill bidding based other market and consumer reports, including the following: (1) a May 2008 report by analyst Merriman Curhan Ford saying that Bidz's practice of starting each auction at $1.00 creates a "risk of every item selling for only

purposes of demand. *See Beam I*, 833 A.2d at 977.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#86/89**
**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

$1.00—which would significantly impact the company's revenues and gross margins," *id.* ¶ 37; (2) an October 2008 report by the Stanford Group Company stating that Bidz's no-reserve auctions "have the potential to result in sales below Bidz's purchase price," and that the company runs its auctions with its own "23 person technology and development staff," *id.* ¶¶ 38, 47; (3) a November 2008 report by Roth Capital Partners suggesting that recent modifications to Bidz's auction system made the "company's model more susceptible to manipulation," *id.* ¶ 48; and (4) three reports on the website Ripoff Report where unidentified web users alleged "shill bidding" and that "the company has dummy accounts that places autobids to protect the price" of goods, *id.* ¶ 49.

Notably absent from the Amended Complaint, however, is any allegation—let alone a particularized allegation—that Itkin, Hanelt or Singh ever saw or knew about the existence of any of these reports. As the Court explained in the April 27 Order, "[s]uch warnings, and others alleged in the Complaint, are more akin to 'red flags' that the Board 'should have recognized' rather than particularized allegations that each member of the Board 'knew' of the alleged problems." *See* Dkt. #78, at 8. There is nothing suggesting that the Board was ever presented with these "red flags," and although there are conclusory allegations that the Board consciously disregarded the warnings, Plaintiffs' conclusion requires the Court to make a logical leap it cannot do in light of the requirement that Plaintiffs provide particularized factual allegations of, at the least, knowledge. *See Abbott Labs*, 325 F.3d at 799 (holding that the Board of Directors had knowledge of potential misconduct where "formal certified" warning letters were sent from the U.S. Food and Drug Administration directly to the Board); *see also In re Pfizer Inc. S'holders Litig.*, 722 F. Supp. 2d 453, 460 (S.D.N.Y. 2010) (letters to the board from the FDA); *In re Intel*, 621 F. Supp. 2d at 174 ("Plaintiff identifies a number of so-called 'red flags' [but] fails to identify what the Directors actually knew about the 'red flags' and how they responded to them"); *In re Citigroup*, 964 A.2d at 128 ("Plaintiffs fail to plead particularized facts suggesting that the Board was presented with 'red flags' alerting it to potential misconduct at the Company." (internal quotations omitted)). At the most, the factual allegations related to "red flag" reports expose Itkin, Hanelt and Singh to a "mere threat of liability," but are not so severe that they face the required "substantial likelihood of liability." *See Rattner v. Bidzos*, 2003 WL 22284323, at *13 (Del. Ch. Oct. 7, 2003) ("claimed red flags are only useful when they are either waived in one's face or displayed so that they are visible to the careful observer").

Nor does the allegation that each of the members of the Board knew about shill bidding because, collectively, the "Individual Defendants knew that Bidz's core business revolved around its online auction processes, [and] that the Company's revenue is dependent on its ability

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

#86/89
JS-6

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

to generate a high volume of traffic to its website" excuse demand. *See FAC* ¶ 65. Just because Bidz's business is based on online auctions does not mean that the directors knew about any alleged shill bidding, and the generalized allegations that the "Individual Defendants" as a whole understood Bidz's business does not mean that the Outside Directors also knew of shill bidding. Without particularized factual allegations linking Bidz's business model to shill bidding, Plaintiffs have not yet established that demand would have been futile. *See In re Verifone Holdings, Inc.*, No. CV 07-6347, 2009 WL 1458233, at *5 (N.D. Cal. May 26, 2009) ("Plaintiffs do not allege with particularity *how, when or which* of the directors became aware of the [business' problems] and how they failed to act upon this knowledge (emphasis added)).

   Similarly, the remaining allegations related to the Board of Directors' knowledge are not sufficient to plead demand futility. For example, the Amended Complaint alleges that the Board of Directors had knowledge of shill bidding because of the existence of Bidz's "Corporate Governance Principles." *See FAC* ¶ 68. These principles provide for "regularly-scheduled presentations to the Board from finance, sales and marketing and the major lines of business and operations of the Company," and give the Board "complete access to any information about the Company that it deems necessary or appropriate to carry out its duties." *Id.* Moreover, the "CEO and other executive officers are responsible for running the Company's day-to-day operations and appropriately informing the Board of the status of such operations." *Id.* Even assuming that these "Corporate Governance Principles" were followed, there is still no particularized factual allegation suggesting that Itkin, Singh or Hanelt actually knew of any shill bidding and consciously decided not to act. In addition, the fact that a case was pending in this Court against Bidz and Zinberg does not establish Hanelt, Itkin or Singh's knowledge of shill bidding at the time the Complaint in this case was filed, nor that the other case—in which they were not named defendants—creates a substantial likelihood of liability here. *See FAC* ¶ 52 (referencing *Tidenberg v. Bidz.com, Inc., et al.*, No. CV 08-5553 PSG (FMOx) (C.D. Cal. Aug. 11, 2008)).

   Plaintiffs offer other allegations that "the members of the Board knew" of certain facts, and therefore knew that shill bidding was occurring at Bidz. Specifically, the Board allegedly "knew" that 44% of actions did not result in transactions, *see FAC* ¶ 190(c), "knew" the average selling price for items sold in the auctions, *see FAC* ¶ 190(d), and "knew" that sales of "high end items to hundred thousand dollar accounts were not being completed," *see FAC* ¶ 190(f). These allegations, suffer from many of the pleading inadequacies identified above. Not only are the allegations that the collective Board of Directors "knew" of certain business facts insufficient in

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#86/89**
**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

and of themselves as they do not identify who had the knowledge or how it was acquired,[7] but the allegations also require the Court to conclude that, among others, incomplete auctions are the result of shill bidding. In this context, Rule 23.1 requires particularized factual allegations of knowledge and bad faith or conscious disregard; these allegations do not meet Rule 23.1's requirements.

      Finally, Plaintiffs point to statements made to the Securities and Exchange Commission in Bidz's 2010 Form 10-K indicating that there were "material weaknesses" in Bidz's computer software.[8] More specifically, in the 10-K form, Bidz tells the SEC that it recently switched its software system "from our proprietary enterprise operating system to an ERP system running on a customized Microsoft Dynamics AX," and encountered certain difficulties such as a lack of controls to detect errors in account balances. *See July 12, 2010 Request for Judicial Notice*, Ex. E, at 325. Bidz went on to explain that "[n]othwithstanding the material weaknesses described . . . management has concluded that our financial statements for the periods covered by and included in this report are fairly stated in all material respects in accordance with generally accepted accounting principles in the United States for the periods presented herein." Plainly, Plaintiffs offer no explanation as to how a recognized weakness resulting from an operating system migration shows that Itkin, Hanelt and Singh knew about shill bidding, and Bidz's statements to the SEC are not grounds to excuse demand.[9]

---

[7] Plaintiffs add that Itkin, Singh, and Hanlet "knew" of shill bidding because of their role on the Audit Committee. *See FAC* ¶ 75. The mere fact that they served on the Audit Committee are insufficient to establish bad faith. *See In re Computer Sciences Corp. Derivative Litig.*, 2007 WL 1321715, at *9 (C.D. Cal. Mar. 26, 2007) (Pfaelzer, J.) (finding that general allegations of the Audit Committee's responsibilities were insufficient to support allegations that the Audit Committee members knew of the alleged wrongdoing); *id.* (noting that the presumption that directors were faithful to their fiduciary duties "precludes the Court from assuming that the Audit Committee members violated their fiduciary duties while performing their statutory duties").

[8] The Court note that this report was filed with the SEC on March 9, 2010, after the Complaint was filed in this Court and after demand should have been made, if necessary. *See FAC* ¶ 63.

[9] The fact that the 2010 10-K also includes the statement that "a large number of failed auctions in which winning bidders do not complete their purchases could adversely affect [Bidz's] results of operations" does not change the Court's analysis. *See FAC* ¶ 190(c). Without any particularized factual allegation linking failed auctions to shill bidding, the Court cannot jump to the conclusion that the Outside Directors knew of the existence of shill bidding because an

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#86/89**
**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

Plaintiffs have failed to offer particularized allegations that Individual Defendants Itkin, Hanelt and Singh intended to breach their fiduciary duties or acted with "conscious disregard" toward those duties. *See Disney*, 906 A.2d at 67. As a result, the Court cannot conclude that any of them faces a substantial likelihood of liability related to shill bidding at Bidz.[10]

        ii.        <u>Director Liability for using "Suspect" Accountants</u>

As an independent basis for excusing demand, Plaintiffs allege that each of the members of the Board face a substantial likelihood of liability for retaining or allowing Bidz to use Stonefield as Bidz's accounting auditor. *See FAC* ¶¶ 191-92. After this Court's April 27 Order, Plaintiffs shift the Court's inquiry from one tying Stonefield to shill bidding, to one alleging a breach of fiduciary duty merely by retaining Stonefield. Nevertheless, the shift in argument does not establish that demand is excused. Plaintiffs allege that the Board's decision to retain Stonefield despite a public report questioning its qualifications makes each of the Individual Defendants liable for breach of fiduciary duties. *See id.* ¶ 191. As Plaintiffs do not allege bad faith or a knowing breach of fiduciary duties in retaining Stonefield, Plaintiffs argument must

---

admittedly high number of auctions were never completed.

[10] Although not in the section of the Amended Complaint containing specific allegations related to demand excusal, Plaintiffs also claim that the Directors breached their fiduciary duties by making false and misleading statements throughout the relevant period. For example, SEC filings between 2007 and 2010 indicated that Bidz was a healthy business. *See FAC* ¶ 109. Plaintiffs allege that claims like these were false and misleading because the Board of Directors "failed to disclose and misrepresented materially adverse facts which were known by the Individual Defendants." *Id.* ¶ 116. First, the Board knowingly failed to disclose the presence of shill bidding. *Id.* ¶ 117. Second, the Board knowingly failed to disclose that its auditor had been criticized by a professional accounting organization. *Id.* ¶ 118. However, to impose liability on these directors, their actions must be marked by knowledge or bad faith, neither of which are alleged with respect to the false statements. Moreover, for the reasons indicated above, Plaintiffs have not alleged particularized facts indicating that the Outside Directors had knowledge about shill bidding, and thus, they could not "knowingly" fail to disclose that fact. *See In re Citigroup*, 964 A.2d at 135 ("Even accepting plaintiffs' allegations as true, the Complaint fails to plead with particularity facts that would lead to the reasonable inference that the director defendants made or allowed to be made any false statements or material omissions with knowledge or in bad faith.")

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#86/89**
**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

fail. Moreover, the Court notes that Bidz's shareholders apparently ratified the Board's decision to retain Stonefield as Bidz's auditor. *See FAC* ¶¶ 82-83.

Similarly, though not cited as a reason for excusing demand in the Amended Complaint, Plaintiffs allege that the Individual Defendants breached their fiduciary duties to Bidz by using a suspect Jewelry Appraiser. *See id.* ¶¶ 85-90. Not only do the allegations fail to amount to a charge of bad faith or intentional breach of fiduciary duties by the Outside Directors, but the allegations also fail to link the appraiser's alleged improprieties to Bidz. For example, the Amended Complaint says that the owner and manager of the appraiser, Norman Monteau, "admitted that he had falsely appraised jewelry sold via an online auction." *Id.* ¶ 86. Notably absent from that same paragraph, however, is (a) when Monteau admitted to that (*i.e.*, before or after demand should have been made), (b) Monteau's, or anyone else's, identification of Bidz as the online auction site benefiting from the false appraisals, and (c) that the Board of Directors knew or should have known of Monteau's appraisal record at the time of demand.

iii.   Itkin's Potential Liability for his Conduct as CFO

Finally, Plaintiffs allege that demand is excused because Itkin, in particular, has an interest in this case due to the fact that the SEC is investigating Bidz's accounting practices from February 1999 until 2000, a period when Itkin was CFO. *See FAC* ¶ 195. By the Court's interpretation, the premise of the allegation related to Itkin is that because there is an SEC investigation into accounting practices occurring before the relevant period in this case that may expose Itkin to separate liability, Itkin is not disinterested for purposes of judging demand in this case. Yet, the test for demand considers the likelihood that a director would expose himself to personal liability if he responds to a demand. *See Guttman*, 823 A.2d at 503 ("the key inquiry in the *Rales* analysis is whether the plaintiffs have pled facts that show that these five directors face a sufficiently substantial threat of personal liability to compromise their ability to act impartially on a demand"). As indicated above, Plaintiffs have not made such a showing with respect to Itkin and the existence of an SEC investigation does not alter that fact.

iv.   Summary

Because Plaintiffs have failed to make particularized factual allegations that the Outside Directors faced a substantial likelihood of personal liability if they acted upon a demand, the Court finds that Plaintiffs have failed to raise a reasonable doubt as to their disinterest in assessing such a demand.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**#86/89**
**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |

        c.    Whether the Weight of the Evidence Raises a Reasonable Doubt as to the Board's Impartiality

Having found each of Plaintiffs' allegations insufficient in isolation, the Court is required to determine whether the totality of Plaintiffs' allegations demonstrate a reasonable doubt about the Board's impartiality. *See Harris v. Carter*, 582 A.2d 222, 229 (Del. Ch. 1990). As discussed at length above, Rule 23.1 raises the pleading standard in this case and requires that the allegations in the Complaint "must comply with stringent requirements of factual particularity that differ substantially" from notice pleading under Rule 8. *Brehm*, 746 A.2d at 254. While the totality of the evidence weighs heaviest on director Itkin, the Court concludes that Plaintiffs' allegations, even considered cumulatively, fail to establish Rule 23.1's particularity requirement as to Itkin or the other Outside Directors. The added requirement that Plaintiffs plead bad faith, conscious disregard or other intentional breaches of duty only buttresses the Court's conclusion. Whether considered individually or cumulatively, Plaintiffs have failed to allege facts to support their allegation that the Board could not have fairly considered a demand in this case.

    C.    Conclusion

As Plaintiffs have failed to adequately allege that demand would have been futile, the Court does not excuse their failure to make pre-suit demand upon the Board. Accordingly, the Court GRANTS Bidz's motion to dismiss without leave to amend.

IV.    The Individual Defendants' Motion to Dismiss

The Individual Defendants move to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim. As was the case with the April 27 Order, because the Court grants Bidz's motion to dismiss, the Individual Defendants' motion to dismiss is MOOT.

V.    Conclusion

Based on the foregoing, the Court GRANTS Bidz's motion to dismiss without leave to amend, rendering the Individual Defendants' motion to dismiss MOOT.

**IT IS SO ORDERED.**

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#86/89**
**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4984 PSG (Ex) | Date | February 24, 2011 |
|---|---|---|---|
| Title | In re Bidz.com, Inc. Derivative Litigation | | |